ALFRED LE BLANC, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1872.   Promulgated June 9, 1927.

A stockholder of a corporation who, to protect and conserve his own business interests, enters into an agreement with an employee of the corporation that such employee shall receive the dividends upon his shares of stock so long as the employee shall remain with the corporation, is entitled to deduct the amounts of the dividends paid to the employee as a business expense.

*Isom J. Guillory, Esq.*, and *E. Barrett Prettyman, Esq.*, for the petitioner.

*W. Frank Gibbs, Esq.*, for the respondent.

This is a proceeding involving determinations of income tax for 1918, 1919, and 1920, as follows:

| Year | Overassessment | Deficiency |
|------|------|------|
| 1918 | $7,575.23 | |
| 1919 | | $10,372.52 |
| 1920 | | 18,586.85 |

The petitioner claims an overassessment for the year 1918 in the amount of $19,037.15. The deficiencies arise from the Commissioner's inclusion in gross income of certain dividends on stock owned by the petitioner which were paid to petitioner's son under an agreement, and the Commissioner's refusal to allow the petitioner to deduct these amounts as a business expense.

### FINDINGS OF FACT.

The petitioner is a resident of New Orleans, La., and for about forty years prior to 1918 had been engaged in the steamship agency business in that city. Among several steamship lines for which he acted as agent was the Harrison Steamship Lines, an English steamship company with offices at Liverpool.

In 1910 the petitioner's son, Stewart LeBlanc, who had been employed in his father's office, learned that the connection between the Mobile & Ohio R. R. and the Elder-Dempster Steamship Lines at Mobile had been severed. Believing that he could secure this business, he suggested to his father and to one M. J. Sanders, agent at New Orleans for the Leyland Steamship Lines, that a corporation be formed to act as subagent at Mobile for the steamship companies represented by the petitioner and Sanders.

Such a corporation was formed under the name of Mobile Liners, Inc., with a capital stock of $5,000. The 50 shares of stock of a par value of $100 each were distributed, 25 shares to Sanders, 24 shares to petitioner, and 1 share to Stewart LeBlanc. Sanders became the president of the company, the petitioner became vice president, and Stewart LeBlanc was made manager and treasurer at a salary of $150 a month.

The business was conducted entirely by Stewart LeBlanc, and because of his personal capabilities it was very successful. At the end of 1917 the business had greatly increased, the stockholders had drawn a number of dividends, and Stewart LeBlanc's salary had been increased to $5,000 a year.

By 1917 he had married and had a child. He was dissatisfied with his limited opportunities under the salary he was receiving and desired to build up something which, like his father, he might leave to his children. He felt he had created the company and was responsible for its prosperity.

He proposed to his father, the petitioner, that the father's 24 shares of stock in Mobile Liners, Inc., be transferred to him. The petitioner recognized that his son's efforts justified his demand for a greater share of the earnings of the company than his then salary. The son had opportunities to make other connections. He had received an offer of $25,000 a year to take charge of an agency in New York for another line, and he had been planning an amalgamation of steamship agencies on the South Atlantic and in the Gulf.

Furthermore, the son was very favorably regarded by the steamship owners in England, where he had worked and was known, and the petitioner regarded it as important to his own relations with these owners that his son be retained within his own organization.

The petitioner did not want to give the stock to his son for the reason that he desired to retain ownership so that in the event Stewart LeBlanc left Mobile or died he would be able to place one of his other sons there, and also because he did not care to have the stock by any chance pass out of the possession of his own family to that of his son's wife's family. Furthermore, he was apprehensive that Sanders might believe he was giving up his interest in the Mobile agency, in which event Sanders might divert the Leyland steamship business elsewhere.

After considerable negotiation it was agreed between the petitioner and his son that the son should receive all the dividends on the father's stock as long as the son should remain with the Mobile Liners, Inc. The terms of this agreement are not entirely clear beyond the definite agreement that the dividends for 1918, 1919, and 1920 were to be so paid. To this end the petitioner wrote to his son, as treasurer and manager, the following letter under date of February 28, 1918:

Please pay any dividends that may be declared on my stock, for last year and until further notice, to yourself, instead of to me. This letter is your authority.

The three stockholders, Sanders, the petitioner, and his son, met and duly declared a dividend of $1,000 a share in 1918. Sanders knew nothing of the agreement and so far as he was aware Stewart LeBlanc was receiving only his $5,000 salary and a $1,000 dividend. The check for the dividend on petitioner's stock was, however, drawn to the son and received by him. The dividends were shown on the corporation's books as paid one-half to Sanders and one-half to Stewart A. LeBlanc.

The corporation, Mobile Liners, Inc., filed a personal service return in which it showed the distributees as Sanders and Stewart LeBlanc, omitting the petitioner. The petitioner filed an original return omitting the dividends, and later filed an amended return including the dividends and deducting the full amount as an expense. Stewart LeBlanc filed a return in which he returned the dividends as his distributive share of the corporate earnings.

Late in 1919 the petitioner's first wife died, and the question then arose in connection with the rights arising under the community property laws of Louisiana by reason of her death, whether the income received by the son on the stock was collatable as a premature testamentary gift. It was decided, apparently between the parties themselves, that it was not collatable, and the mother's 12 shares were distributed among her four children, 3 shares to each.

This made it necessary for Stewart LeBlanc to make other arrangements to insure the receipt by him of the compensation he had theretofore been receiving. It was agreed by Sanders and the cor-

poration that he should receive a portion of the earnings before they were credited to surplus, to be paid directly to him by the corporation as compensation for his services. In addition, however, he continued to receive the dividends on the shares of stock remaining in his father's name.

The respondent disallowed the deduction as expenses of the amounts of the dividends on the petitioner's stock which had been paid to his son.

## OPINION.

STERNHAGEN: The primary question is whether the dividends on petitioner's stock during the years in question are part of his income notwithstanding the fact that, because of his instruction to the corporation, they were not received by him but paid directly to his son Stewart. The question is essentially the same as that involved in *Samuel V. Woods*, 5 B. T. A. 413; *Fred W. Warner*, 5 B. T. A. 963; *Providence & Worcester R. R. Co.*, 5 B. T. A. 1186, and in *Rensselaer & Saratoga R. R. Co.* v. *Irwin*, 239 Fed. 739; affd. 249 Fed. 726; certiorari denied 246 U. S. 671.

The petitioner was himself the stockholder and continued to own the stock. Notwithstanding the request to do so, he refused to give it to his son because he wanted to control its disposition, an important attribute of ownership. His direct purpose was to augment his son's income for his part in the success of the corporation—not to make the son a stockholder, but to let him benefit, through the petitioner, by its earnings. The son received no dividend, because between him and the corporation there was no such relation as entitled him to a dividend. Only stockholders were entitled to dividends, and even although the amount was the same, his right to it was not derived from any of the considerations which apply to stockholders, but from a separate agreement with one other than the corporation. As between him and the corporation he had not even that inchoate interest in earnings which a stockholder has before dividend declared. All of the attributes and incidents of a stockholder were continued in the petitioner.

The significance and importance of this is clear when it is remembered that the individual stockholder taxpayer is freed from normal tax upon his dividends. This is upon the theory that, after all, the incidence of the corporation income tax is ultimately upon the stockholders, and Congress has to this extent lightened their tax burden. But it is hardly arguable that this legislative intent carried beyond the stockholders to anyone who might be collaterally or indirectly interested in the corporation's earnings. It is the stockholder who gets the dividend and he alone who may have the normal-tax credit.

The petitioner points to Louisiana law by which the usufruct of property may be legally held by one other than the owner. Be that as it may, it does not change the solution of the problem. It may be that the son has acquired an independent right against the corporation (questionable, as will be seen from the adjustment which was made when the stock passed by death to another), yet this was only because the stockholder by anticipation had enjoyed and exercised his right of ownership by transferring it. He was, in effect, postdating his assignment to the several times when he was to receive dividends. As in the *Rensselaer* case, *supra*, the single contract was merely a convenience by which the amount of the dividend went across lots instead of taking the highway.

The adjustment when petitioner's wife died, to which reference has been made, is significant. By Louisiana community property law the wife owned one-half the stock upon which the dividends in question were paid. Upon her death such stock descended to her children. At that time it was recognized by all those interested that the ownership of the stock carried with it the dividends; and thereupon, since so much of the amount would no longer be covered by petitioner's order to the corporation, it was brought about that the salary of Stewart LeBlanc should be increased. Indeed, the question was raised whether such dividends on this stock as had already gone to Stewart were properly collatable, but this question was settled without adjudication and gives petitioner no support.

We hold that the amount of the dividends upon petitioner's stock paid in the years in question is properly within his gross income.

Petitioner urges in that event that the amount is a proper deduction as a business expense. He was engaged in numerous ventures directly and incidentally related to shipping. He was not merely an inactive stockholder in Mobile Liners, Inc. He and Sanders used this means of advancing and holding their personal interests in representing foreign steamship lines. Stewart LeBlanc was an important factor of success. He was in favor at the home office in London. He was threatening to quit, and the loss of his services might have been serious. To protect his own business position, the petitioner acquiesced in his demand for greater compensation and, for the reasons already set forth, did it by this means without consulting Sanders. The correspondence in evidence shows that it was done on a business basis to retain Stewart's services and hold the Mobile steamship business. This is in our opinion a deductible expense. See *Harold Mortenson*, 3 B. T. A. 300.

As to the overassessment for 1918, the petition is dismissed for want of jurisdiction. *Cornelius Cotton Mills*, 4 B. T. A. 255; *John F. Cook*, 4 B. T. A. 916; *Florence M. Smith, Executrix*, 5 B. T. A. 225.

*Judgment will be entered on 15 days' notice, under Rule 50.*

SMITH, dissenting: The facts in this case are simple and undisputed. Stewart A. LeBlanc, son of the petitioner, had been instrumental in creating Mobile Liners, Inc., a Louisiana corporation, for the purpose of conducting a steamship agency at Mobile, Ala. The son had acted as manager of the corporation at Mobile and had been responsible for the company being made the agent of the British Ministry of Shipping for all foreign ships going to Mobile. The son owned only 1 share of the capital stock and his father 24 shares out of a total of 50 shares. The son was receiving a salary of $5,000. He requested his father to sell him his 24 shares in order that he might receive the just rewards of his labor. The father did not wish to part with the legal ownership of the shares but agreed that his son should receive the usufruct of his shares so long as he should remain as manager of the company at Mobile. This agreement was entered into in 1917 and was faithfully carried out. The petitioner in pursuance of the agreement directed Mobile Liners, Inc., to pay over to Stewart A. LeBlanc all of the dividends accruing to him upon his shares of stock. Stewart A. LeBlanc received the dividends direct from the corporation and the petitioner neither received them nor had any ownership of them during the taxable years. The son returned them as a part of his income in his income-tax returns and paid income tax upon them. The father, not having received them and not having any ownership of them, did not return them as a part of his income.

The contract by which the petitioner parted with his interest in the dividends declared was made in New Orleans and was a Louisiana contract and subject to the provisions of the Louisiana law. The Civil Code of Louisiana expressly recognizes the usufruct of property as a property right transferable and otherwise possessing the attributes of distinct property. The code defines a usufruct as:

The right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility, and advantages which it may produce, provided it be without altering the substance of the thing. (Art. 533.)

The code also contains the following provisions regarding usufructs:

ART. 535. Perfect usufruct does not transfer to the usufructuary the ownership of the things subject to the ununfruct * * *.

ART. 537. Usufruct is an incorporeal thing because it consists in a right.

ART. 540. Usufruct may be established by all sorts of titles; by a deed of sale, by a marriage contract, by donation, compromise, exchange, last will, and even by operation of law. * * *

ART. 541. Usufruct may be established on every description of estates, movable or immovable, corporeal and incorporeal.

ART. 542. Usufruct may be established simply, or to take place at a certain day, or under condition; in a word, under all such modifications as the person who gives such a right may be pleased to annex to it.

ART. 544. All kinds of fruits, natural, cultivated or civil, produced, during the existence of the usufruct, by the things subject to it, being to the usufructuary.

ART. 545. * * * Civil fruits are rents of real property, the interest of money and annuities.

All other kinds of revenue or income derived from property by the operation of the law or private agreement, are civil fruits.

ART. 2477. The tradition or delivery is the transferring of the thing sold into the power and possession of the buyer.

ART. 2481. The tradition of incorporeal rights is to be made either by the delivery of the titles and of the act of transfer, or by the use made by the purchaser, with the consent of the seller.

I dissent from the decision of the Board that the income from the shares of stock standing in the petitioner's name during the years 1918, 1919, and 1920 was income of the petitioner. The decision of the Board proceeds upon the theory that the petitioner had income from the dividends payable upon his shares of stock by reason of the fact that he was the owner of the stock. This, however, is not a proper basis for determining whether the petitioner is liable to income tax in respect of dividends. The criterion laid down by the statute is whether a person *derives* income from dividends. (Sec. 213 (a), Revenue Act of 1918.) As was stated by the Supreme Court in *Eisner* v. *Macomber*, 252 U. S. 189:

* * * A gain, a profit, something of exchangeable value, *proceeding from* the property, *severed from* the capital however invested or employed, and coming in, being " *derived* ",—that is, *received* or *drawn by* the recipient (the taxpayer) for his *separate* use, benefit and disposal;—*that* is income derived from property. Nothing else answers the description.

It is not enough that wealth flows from a person's property in order that he shall be liable to income tax in respect of it. It must be received or drawn by him for his separate use, benefit, and disposal before the tax will attach. The gain or profit must be to the individual charged with tax—not to another.

The principle announced by the Supreme Court in *Irwin* v. *Gavit*, 268 U. S. 161, is applicable here. In that case it was stated:

The Courts below went on the ground that the gift to the plaintiff was a bequest and carried no interest in the corpus of the fund. We do not regard those considerations as conclusive, as we have said, but if it were material a *gift of the income of a fund ordinarily is treated by equity as creating an interest in the fund*. Apart from technicalities we can perceive no distinction relevant to the question before us between a gift of the fund for life and a gift of the income from it. The fund is appropriated to the production of the same result whichever form the gift takes. Neither are we troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law. (Italics ours.)

Looking to the substance and not merely to the form it is evident that the petitioner *derived* no income from the dividends paid on his shares of stock in Mobile Liners, Inc., during the years 1918, 1919, and 1920.

I furthermore heartily dissent from the decision of the Board to the effect that Alfred LeBlanc may deduct from his gross income as an ordinary and necessary expense the amount of the dividends paid on his shares of stock by Mobile Liners, Inc., directly to Stewart A. LeBlanc. The statute permits an individual to deduct from his gross income, among other things:

All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *. (Sec. 214 (a) (1), Revenue Act of 1918.)

The petitioner was the representative of the Harrison Steamship Lines in New Orleans. He was their agent in that city. He also was the agent for certain other steamship companies. He was not, however, the agent of any steamship line in Mobile. The steamship agency in Mobile was owned by Mobile Liners, Inc. That corporation was created for the purpose of acting as such agent. The petitioner was at most a stockholder in that corporation. To hold that the petitioner may deduct from his gross income as a business expense the dividends upon his shares of stock in Mobile Liners, Inc., does violence to the very provisions of the statute. If the dividends on that stock are to be included in the petitioner's gross income he should be required to pay income tax upon them. There is no provision of the statute which permits the deduction of them from his gross income. In my opinion the statute should not be given a strained and unnatural construction merely for the purpose of reaching a substantially equitable result in the case at bar.