## MARSHALL FIELD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11840.   Promulgated March 6, 1929.

*Beverly R. Robinson, Esq., Daniel B. Priest, Esq.,* and *Edward N. Perkins, Esq.,* for the petitioner.

*John D. Foley, Esq.,* for the respondent.

OPINION.

GREEN: The first question raised in this proceeding is whether certain income from a trust fund, received by the petitioner's wife pursuant to a formal and complete assignment by him to her of his right or interest, is nevertheless taxable to the petitioner.

The right of the petitioner in the trust was clearly and definitely established and determined by the courts of the State of Illinois, and as to property rights, its decree is unquestionably binding on this Board.

From this decree it is apparent that as to the two-fifths trust, the petitioner's right or interest is adjudged to be unqualified to the extent that he is not only entitled to all the income but is so entitled thereto with all the incidents of absolute ownership. By virtue of these provisions in the decree the right or interest in question is as freely assignable as any beneficial right or interest under a testamentary trust ever can be.

That the petitioner's vested estate in the two-fifths trust was assignable under the applicable law, namely, that of the State of Illinois, is not questioned. Consideration is not necessary to support and render perfect and irrevocable an executed assignment of a vested equitable right or interest such as the petitioner's interest in the two-fifths trust. *Edith H. Blaney*, 13 B. T. A. 1315. The petitioner by such assignment completely divested himself of any interest in the right to receive such income and it follows that he may not be taxed therefor.

The second question is whether a sum paid counsel, pursuant to a contingent-fee contract, for obtaining for the petitioner a decree resulting in income which otherwise he could not have received is a capital expenditure or a business expense.

The construction of the will of the late Marshall Field was brought about by litigation instituted by the petitioner. The court in its decree held that upon the death of Henry Field the petitioner succeeded to his brother's interest in the two-fifths trust, free from all provisions as to accumulations of income. The decree, being one of construction, added nothing to the petitioner's rights, which it merely declared.

The effect of the decree was to give the entire income of the two-fifths trust to the petitioner, whereas, but for the decree, the trustees would have received none of it until he arrived at the age of 30 years, but one-sixth of it between the ages of 30 and 35, but one-third of it between the ages of 35 and 40, and but one-half of it between the ages of 40 and 45. The income so retained by the trustees under

the terms of the trust instrument, that is, the whole for a time, then for 5 years five-sixths, then during successive 5-year periods, two-thirds and a half, would, but for the decree, have been added to principal and have been treated as capital, so that none of it would have been income received by the petitioner.

The provision of the decree that the income from Henry Field's two-fifths share should be distributed currently to the petitioner was directly attributable to the endeavors of Stanchfield and his associates, who represented the petitioner in the proceeding.

The circumstances in regard to the making of the contingent-fee agreement and the subsequent settlement of the disputed claim for professional services have been set up at length in the findings of fact.

The applicable statutes are sections 212, 213, and 214 of the Revenue Act of 1921.

Section 212 (a) reads as follows:

That in the case of an individual the term " net income " means the gross income as defined in section 213, less the deductions allowed by section 214.

SEC. 213. That for the purposes of this title (except as otherwise provided in section 233) the term " gross income "—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatsoever. The amount of all such items (except as provided in subdivision (e) of section 201) shall be included in the gross income for the taxable year·in which received by the taxpayer, * * *

and section 214:

(a) That in computing net income there shall be allowed as deductions:
(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

In *George P. and Bessie P. Douglas,* 1 B. T. A. 372, we held that " legal expenses incurred in breaking a will by which a taxpayer comes into possession of his inheritance are not expenses incurred in carrying on a trade or business."

In *Lena G. Hill,* 8 B. T. A. 1159, we said, " the attorney's fee of $1,000 was paid, not in connection with the defending, protecting or establishing the petitioner's title or right to the possession of property, but in connection with the litigation to establish the petitioner's legal liability to pay the debts for material incurred by the contractor. We think that this amount, as well as the $500 attorney's fee paid in 1923 in connection with other matters, constitutes ordinary and necessary business expense."

In *Frederick McLean Bugher et al., Executors*, 9 B. T. A. 1155, there was presented the question as to whether attorney's fees paid were capital expenditures or business expenses. We said:

It is our opinion that to the extent that such payments relate to the right of taxpayers to retain the income or to enlarge their share of the income of the mine, they are deductible; while to the extent that they represent expenditures made to acquire London's interest in the mine or enlarge their own interests as against the McLean estate, or to defend their title to the mine, such payments are in the nature of capital expenditures to be added to the other costs of the property and recovered as are such other costs.

In *First National Bank of St. Louis*, 3 B. T. A. 807, in holding that the attorney's fees, etc., paid in connection with the consolidation of the bank, were capital expenditures, we said: " The transaction which called forth the expenditures here in question was presumably one which increased and maintained the earning power of the taxpayer and thus throughout its corporate life the taxpayer will enjoy the fruits of these expenditures."

In *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932, we held that fees paid for legal services in connection with the taxpayer's negotiations with brokers and in the amendment of its charter authorizing the sale of its stock, were capital expenditures.

In *Columbia Theatre Co.*, 3 B. T. A. 622, we held that attorney's fees paid in connection with the acquisition of leases were capital expenditures.

In *Gilbert Butler et al.*, 4 B. T. A. 756, the heirs of a certain estate, which had among its assets a coal mine under lease, became dissatisfied with the lessee's performance and employed engineers and attorneys to collect data and institute suit for the cancellation of the lease. We held, " The payment made to engineers and others by the corporation for and on behalf of the lessors was a capital expenditure and the value of the securities so paid has been added to the March 1, 1913, value in the determination of gain or loss."

In *William Ziegler, Jr.*, 1 B. T. A. 186, the facts were that the petitioner was the sole beneficiary of a trust and was desirous of having himself appointed as successor to the then trustees. This he desired for two reasons. First, he was dissatisfied with the management of the estate and wished to control it himself, and, second, to avoid the payment of compensation to the trustees to the end that the moneys which would be paid to them if they continued in office, would ultimately come to him. An arrangement was effected whereby the petitioner paid the trustees $200,000 in consideration of which they relinquished their positions and he became the sole trustee. In holding that the amount paid was a capital expenditure rather than a business expense, we said, " The elimination of the other trustees and

the qualifying of the taxpayer as trustee did not vest in him a full ownership of the property, but merely put him in sole control under the instrument creating the trust and the laws governing trust estates. He was not, in effect, buying an estate which forthwith would become his property and the purchase price of which he could not take into consideration in computing his income until he should dispose of the property acquired, but he was rather buying the right to be sole trustee without interference over a period of 12 years. We think the Commissioner was wrong in not allowing any deduction, and that the taxpayer was wrong in claiming in one year deduction of the entire amount paid. The taxpayer should be regarded as having for the purpose of insuring his interest in the estate against waste, purchased a right to do certain things for a period of time and the cost to him of that right should be spread over the period of time during which he was in a position to exercise it."

Expenditures of the kind herein involved are not usual and their classification is not easy. Tested in the light of the above-cited cases, excerpts from the opinions of which we have quoted, we are of the opinion that the amounts paid Stanchfield and his associates are in the nature of capital expenditures and that they may not properly be classified as ordinary and necessary business expenses. The right which the petitioner acquired through the expenditure is an exhausting or wasting right and the petitioner is accordingly entitled to have reasonable allowances to the end that his capital expenditures be returned to him.

In determining how this allowance should be made, we are confronted with the practical difficulty of determining the life of the right acquired as the result of the expenditure to the end that the amount of an annual allowance be determined. Since the petitioner's income at some time should be reduced by the amount of the payments, it would seem that the petitioner's income will be most accurately reflected by allowing a deduction from income each year of the amount paid. Accordingly, the amount of the attorney's fee paid in the year under consideration, should be deducted before reporting the amount received as income.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SIEFKIN dissents.

---

STERNHAGEN, dissenting: This, in my opinion, is directly contrary to numerous other cases which have been decided by the courts and by the Board, and which are, in my opinion, correct. *Ormsby McKnight Mitchel*, 1 B. T. A. 143; *Mitchel* v. *Bowers*, 9 Fed. (2d)

414 (D. C.); *Mitchel* v. *Bowers*, 15 Fed. (2d) 287; 273 U. S. 759; *Bing* v. *Bowers*, 22 Fed. (2d) 450; 26 Fed. (2d) 1017; *American Telegraph & Cable Co.*, 2 B. T. A. 991; *American Telegraph & Cable Co.* v. *United States*, 61 Ct. Cls. 326; 271 U. S. 660; *Louis Cohen*, 5 B. T. A. 171; *Samuel V. Woods*, 5 B. T. A. 413; *Hudson M. Knapp*, 5 B. T. A. 762; *Fred W. Warner*, 5 B. T. A. 963; *Alfred Le-Blanc*, 7 B. T. A. 256; *Ella D. King*, 10 B. T. A. 698; *Arthur H. Van Brunt*, 11 B. T. A. 406; *George M. Cohan*, 11 B. T. A. 743; *M. C. Garber*, 11 B. T. A. 979; *Julius Rosenwald*, 12 B. T. A. 350; *Charles F. Colbert, Jr.*, 12 B. T. A. 565; *T. B. Noble*, 12 B. T. A. 1419; *Florence V. Cruickshank*, 13 B. T. A. 508; *Maud Dunlap Shellabarger*, 14 B. T. A. 695.

Under varying states of fact the principle has been consistently recognized that by an assignment of future income the assignor does not escape tax. To say that such an assignment is a transfer of an interest in the fund is to override the principle by casuistry. By its very terms the assignment gave to the wife only an interest in income and the corpus remained unaffected in petitioner; so that even if there is a distinction between a transfer of an interest in the corpus and a so-called transfer of the right to receive income, this is in the latter category. The assignee derives through the petitioner and the law treats the income as if it were received by him before it goes to her. This theory is no harder to grasp and involves no more fiction than many other concepts of the law, while to disregard it would distort the income tax by making it depend upon the disposition of income.

As to the Stanchfield payment, I am unable to find its place among the statutory deductions allowed in the determination of taxable net income.

MARQUETTE, TRAMMELL, ARUNDELL, VAN FOSSAN, and MURDOCK agree with this dissent.