MARION STONE BURT LANSILL, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

MARY BELLE BURT LEBUS, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

ALICE BURT MCDOWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

EMMA BURT HUTCHINGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

MARION A. BURT BECK, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

GEORGE R. BURT, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

JANE BURT HAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 18714, 18745, 18824, 19567, 19593, 19609, 19614
Promulgated September 23, 1929.

*Beverly R. Jouett, Esq., Charles B. McInnis, Esq.,* and *Watson Washburn, Esq.,* for the petitioners.
*Orris Bennett, Esq.,* for the respondent.

416

**OPINION.**

STERNHAGEN : Each of these seven petitioners is a child or grandchild of Wellington R. Burt, deceased, and since the deficiencies assailed are similar in theory and are attacked upon the same propositions of law, they have been presented and will be decided together. The facts have been embodied in a written stipulation.

The first issue is in its nature similar to that in many proceedings which have been presented to the Board for decision. It is founded upon the theory adopted by respondent that one who, having a right or interest in future income upon which tax would be assessed to him when received or accrued, transfers voluntarily as by contract such right or interest to another who is to receive the income directly, is thereafter nevertheless taxable as if the income had come or accrued to him before going to his transferee.[1]

---

[1] *Louis Cohen,* 5 B. T. A. 171; *Samuel V. Woods,* 5 B. T. A. 413; *Hudson M. Knapp,* 5 B. T. A. 762; *Fred W. Warner,* 5 B. T. A. 963; *Alfred LeBlanc,* 7 B. T. A. 256; *Ella Daly King, Executrix.* 10 B. T. A. 698; *Arthur H. Van Brunt,* 11 B. T. A. 406; *George M. Cohan,* 11 B. T. A. 743; *M. C. Garber,* 11 B. T. A. 979; *Julius Rosenwald,* 12 B. T. A. 350; *Charles F. Colbert, Jr.,* 12 B. T. A. 565; *T. B. Noble,* 12 B. T. A. 1419; *Florence V. Cruickshank,* 13 B. T. A. 508; *Maud Dunlap Shellabarger,* 14 B. T. A. 695; *J. V. Leydig,* 15 B. T. A. 124; *Marshall Field,* 15 B. T. A. 718.

The facts submitted in evidence, however, do not disclose any transfer by petitioners of a right to receive income or interest in specific income. The first agreement of March 15, 1919, with the attorney obligated petitioner to pay to him, "a sum equivalent to 10% of the full amount or value actually received." Clearly this contemplated two separate events—first, the receipt of all income by petitioners, and, second, the payment by petitioners of a sum equal in amount to 10 per cent of such receipt. Thus, the attorney held a contractual right against petitioners, measured by, but separate from, petitioners' receipts, the receipts being clearly the rightful property of petitioners in the full amount. The supplemental agreement of October 3, 1919, likewise contemplates receipt of the entire income by petitioners and then payment by them of 10 per cent "of the amounts of money received." Thus, the two separate legal situations were preserved, and petitioners retained after these contracts all the rights acquired by the will and the settlement agreement. The next fact stipulated is that of payment of specified amounts by the Bank to the attorneys. The evidence does not contain any intervening fact, and if there was a standing order by petitioner upon the Bank, as suggested, it has not been stipulated or offered in evidence. Thus, much of the argument as to anticipatory assignment has no foundation in the facts of the record. But we do not rest our decision on that ground alone. The argument presented is predicated upon the fact that petitioners did not receive the percentage of royalties, and the assumption that the attorney, by right, actually received them from the bank. The question argued is whether such amounts were income of petitioners and taxable to them, as determined by respondent.

If petitioners received the entire royalties and made no anticipatory disposition of them, the full amount was returnable by them as gross income, regardless of whether they were derived by reason of the original will or as modified by the settlement agreement, or by the settlement agreement separately, or by intestate succession because of the invalidity of the will. For mineral royalties are income under the statute, section 213, and by judicial authority, *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; *United States* v. *Biwabak Mining Co.*, 247 U. S. 116; *Henry L. Berg*, 6 B. T. A. 1287, affd. D. C. App., June 3, 1929; *C. E. Van Devender*, 8 B. T. A. 697, and are no less so because derived through bequest or inheritance, and have an anticipatory value at the time the right to receive them vests. *Irwin* v. *Gavit*, 268 U. S. 161; *George D. Widener et al.*, 8 B. T. A. 651.

In determining whether such an amount received is within gross income, it is not important what disposition is made of it when

received. *Arthur C. Levering*, 5 B. T. A. 616. The coming in of gross income under section 213 must be kept separate from its use or disposition. Such disposition or outgo is significant under the statute only in so far as it may be one of the enumerated deductions permitted under section 214, in order to arrive at net income. Congress has not left it to the taxpayer to elect whether he will arrive at his taxable net income by exclusions from his gross or by deductions, but has expressly required him to use an all-embracing gross from which he may subtract the prescribed items of deduction. Thus the petitioners, if they in fact received the entire royalties, were required to include them in gross, irrespective of whether they · kept them intact, invested them, or spent them for legal services or otherwise. The question of deduction requires an entirely separate inquiry, for not all outgo is deductible, *vide* section 215, and some deductions such as obsolescence are allowed with no present expenditure.

It is of substantial importance that this statutory scheme for arriving at taxable income should be respected, because it has its reason in the necessity for maintaining uniformity of taxation throughout an infinite variety of circumstances. Congress by section 213 intended to use its power to the full extent, *Eisner* v. *Macomber*, 252 U. S. 189; *Irwin* v. *Gavit*, 268 U. S. 161, and the practical necessity of preserving a broad construction so as to avoid continuous controversy as to mere terms or method is manifest. In the present case petitioners insist not only that the error lies in an overtax of net income, but that this results specifically from an overstatement of gross, and hence it is pertinent that under the plan of the statute the use to be made of the income is not germane at this stage of the inquiry.

If petitioners received the entire royalties, it was no less income because it came as the result of suit and settlement involving legal services for which petitioners were obligated to pay upon bill rendered pursuant to a contract. And the fact that the contract measured the compensation at an amount equivalent to 10 per cent of any amount received would no more remove the royalties from petitioners' gross income than a contractual obligation to pay for any other kind of service or goods. Clearly, the use of the royalties · as a measure of petitioners' voluntary obligations, whether to lawyers, doctors, servants, or shopkeepers, is consistent with their inclusion in taxable income, as they normally are. To say that the existence of this obligation justifies an omission to return the full royalties as gross income seems to us to be patently destructive of the statutory system of determining taxable income. And the situation is not changed by the supplemental agreement which requires payment out of the royalties when received.

From the facts stipulated it appears that the Bank, which as executor and trustee received the royalties in the first instance, paid to the attorneys certain amounts. The stipulated facts do not contain the authorization upon which the Bank made these payments, since the book in which an alleged order is printed was expressly made evidence of only certain other documents between its covers. There would be no justification for assuming that the petitioners had any greater obligations than those created by the employment agreements of March 15, 1919, and October 3, 1919, and we must assume that the payments by the Bank were only in discharge of such obligations and were made with the approval and for the convenience of petitioners. Such a short cut does not of itself reduce petitioners' income. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine R. R. Co.*, 279 U. S. 732; *Julius Rosenwald*, 33 Fed. (2d) 423; *Alfred LeBlanc*, 7 B. T. A. 256.

Counsel for the petitioners, notwithstanding the limitations of the stipulation of facts, point in argument to a form of order given by one of the petitioners to the bank dated July 9, 1920, as indicating an irrevocable assignment to the attorneys. This order "authorizes and directs" the bank to pay to the attorneys "10 per cent of the amounts of money which are now or may hereafter become payable" to petitioner under the compromise agreement. "It is understood that this order and authority * * * is given for the purpose of facilitating the execution of the agreements" of employment of March 15, 1919, and October 3, 1919. "This order and authority is not to be construed as in any way modifying or changing said agreements." On July 30, 1920, this petitioner seems to have signed an instrument by which, "for the considerations stated in the above described Order, and for the purpose of expressing more clearly the intention of the parties thereto, it is agreed by said [petitioner] as an amendment to and part of said Order that the same is intended to be and is irrevocable." Arguing from such order as if it were in evidence, counsel urge that thus petitioners made an irrevocable assignment to the attorneys which destroyed their right to receive the 10 per cent in question and thus prevented the percentage amounts from ever becoming their income. But the instrument is not an assignment in terms and there is no evidence of an intention so to regard it. It was not made until long after the employment agreement, and it is unnecessary to consider whether the supplemental statement purporting to make the order irrevocable has any force. It is not like the assignment in *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 436, and *Young* v. *Gnichtel*, 28 Fed. (2d) 789, upon which peti-

tioners' counsel rely. Nor does it go so far in its legal effect as the instrument in *Marshall Field*, 15 B. T. A. 718. The case of *American Cemetery Co.* v. *United States*, 28 Fed. (2d) 918, cited by petitioners, clearly holds that an item, although it may support a deduction, is not to be excluded from gross income.

The logical extent of petitioners' view is denoted by the list of cases already cited. It would imply an intendment that the tax was to be based on amounts only actually received, without regard to the taxpayer's volition or control as to amounts not received. In the present state of the law there is no unmistakable earmark of income. The Sixteenth Amendment suggests none, and the statutory subject of the tax is equally broad, enumerating the exceptions with particularity, Revenue Act of 1918, sections 212 and 213. Actual receipt is nowhere used in the statute to limit the faculty upon which the tax is levied, and the word derived which is found in the statutes and decisions clearly carries a broader connotation. The Supreme Court in *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716, and *United States* v. *Boston & Maine R. R. Co.*, 279 U. S. 732, sustained a tax on amounts attributed to a taxpayer, although he did not receive them, and this decision followed eleven years after the court's denial of certiorari (246 U. S. 671) of a similar ruling in *Rensselaer & S. R. Co.* v. *Irwin*, 247 Fed. 726, and was predicated upon a consistent administration practice. Nor is it necessary to look to an accounting method based, under section 212, upon a system of accruals, because without that, the doctrine of constructive receipt has long been recognized under compelling circumstances and within reasonable limits. *John A. Brander*, 3 B. T. A. 231.

The right in the taxpayer to receive the income at the time it is attributed and taxed to him is likewise not essential, where, as in the *Old Colony*, *Boston & Maine*, and *Rensselaer* and *Rosenwald* cases, *supra*, the taxpayer has by his own volition chosen to dispose of the right to receive income while retaining that from which the income is derived. The volition in disposing of the right is important, for while all will agree that one who never received or had a right to receive or who has involuntarily lost it should not be taxed, it is also plain that his voluntary exercise of the right to dispose of the income before receipt may be just as valuable and important practically as its exercise after receipt. There is no reasonable ground for supposing that Congress intended, by the broad language used, to tax the one and relieve the other. The ability to pay in the case at bar is equally great whether the petitioner received the entire royalties and then paid the lawyer or told the Bank to pay the lawyer directly out of the royalties.

It is not necessary to consider a question sometimes suggested growing out of an asserted distinction between an assignment of an interest in the principal property or fund and a creation or transfer of a right to receive the income. There is in this record no evidence of an express assignment, and no authority is cited for one by construction.

We are of opinion that the amounts paid by the Bank to the attorney as stipulated were part of the gross income of petitioners.

Failing in their contention that the amounts paid to the attorneys are not within their gross income, petitioners fall back upon the view that the amounts are to be allowed as deductions under section 214, the effect of which upon their net income and consequent tax liability is the same. The petitioners, except one, do not disclose into which category or subsection of deductions the payments fall. The statute enumerates the allowable deductions, and it is necessary in any case to bring the item within the language and intendment of one or more of the enumerated classes. While judicial construction may be applied to any of the statutory deductions so as to resolve ambiguity or enforce its true intendment, it can not serve to create a new class or to recognize vaguely an omnibus group of deductions not otherwise specified. This would be clear legislation and beyond the power of the Board or the courts.

In behalf of one of the petitioners it is urged in brief that the payments to the attorneys were "expenses necessarily incurred in the acquisition of the royalty income" and deductible as such "in the absence of some special or peculiar circumstances." But we may not take our eye from the statute and permit the issue to be thus artificially framed in more general or liberal terms. The nearest statutory deduction and the only one within focus is that of section 214(a)(1), Revenue Act of 1918:

SEC. 214. (a) That in computing net income there shall be allowed as deductions:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; and including rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

and section 214(a)(2), Revenue Act of 1921, which, for present purposes is similar.

This section applies to individual taxpayers, whose income, whether from business or otherwise, is all included for taxation under section 213, and whose personal, living and family expenses are, by section 215, denied deduction. It is carefully drafted. Some of its

subdivisions are broad and others more restricted. The restriction that some of the items must relate to a trade or business has been discriminatingly used. It applies to (1) expenses, (4) losses generally, and (8) depreciation. It is expressly negatived as to the losses of subdivisions (5) and (6). And it is omitted from subdivisions (2), (3), and (7) as to interest, taxes and worthless debts. The restriction may not therefore be disregarded or treated lightly. Unless an item, even although it be properly called an expense, is paid or incurred " in carrying on any trade or business," this subdivision can not be invoked. The payment by an individual for legal services is not necessarily a deductible expense. *Helen S. Pennell Estate*, 4 B. T. A. 1039.

How can it be said that these petitioners were carrying on a trade or business? They were the passive recipients of royalties which inured to them by reason of their ancestor's will and the court's decree. They carried on no activity in which they were employed and there was nothing to " occupy their time, labor or attention for the purpose of livelihood or profit," as the term " business " has been sometimes broadly defined. Bouvier's Law Dictionary, *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. See also *Charles L. Suhr*, 4 B. T. A. 1198; *Albert M. Briggs*, 7 B. T. A. 409; *Ignaz Schwinn*, 9 B. T. A. 1304; *B. H. Kizer*, 13 B. T. A. 395. It is not enough to say that by virtue of their contract with the attorneys this percentage was a " charge against the income when derived," because, while such charges may be treated as deductible expenses if incident to a trade or business, as in *La Monte* v. *Commissioner*, 32 Fed. (2d) 220, *American Cemetery Co.* v. *United States*, 28 Fed. (2d) 918, the statutory language expressly restricts the charge to that of trade or business. This also distinguishes *Kornhauser* v. *United States*, 276 U. S. 145, in which the attorneys' fees were incurred as an incident of litigation of an undisputed business.

We are therefore of opinion that the respondent correctly included the attorneys' fees in petitioners' gross income and made no deduction in respect thereof. Since this is the only error assigned or otherwise pleaded in Dockets Nos. 18714 and 18824, those proceedings are completely disposed of.

Some of the petitioners by amended petitions contend that the deficiencies should be reduced by allowing to each petitioner a deduction of a proper part of the inheritance and estate taxes paid by the estate of Wellington R. Burt, deceased, in the amounts and in the years set forth in the findings of fact. This issue is not pleaded in Docket No. 18714 or Docket No. 18824, and, therefore, as to those petitioners the issue is given no consideration.

This issue is entirely predicated on section 703, Revenue Act of 1928, which was enacted after this proceeding was instituted, but by its terms is made retroactive and is therefore properly invoked. Since the contention was not available to the petitioners prior to the filing of the petition it was not presented to the Commissioner for his consideration, and as no brief or argument has been submitted by respondent on this issue, the Board is without information as to the Government's administrative interpretation of this new statutory provision. Regulations 74 merely repeat the statute without elucidation. Its language is as follows:

SEC. 703. DEDUCTION OF ESTATE AND INHERITANCE TAXES—RETROACTIVE

(a) In determining the net income of an heir, devisee, legatee, distributee, or beneficiary (hereinafter in this section referred to as " beneficiary ") or of an estate for any taxable year, under the Revenue Act of 1926 or any prior revenue Act, the amount of estate, inheritance, legacy, or succession taxes paid or accrued within such taxable year shall be allowed as a deduction as follows:

(1) If the deduction has been claimed by the estate, but not by the beneficiary, it shall be allowed to the estate;

(2) If the deduction has been claimed by the beneficiary, but not by the estate, it shall be allowed to the beneficiary;

(3) If the deduction has been claimed by the estate and also by the beneficiary, it shall be allowed to the estate (and not to the beneficiary) if the tax was actually paid by the legal representative of the estate to the taxing authorities of the jurisdiction imposing the tax; and it shall be allowed to the beneficiary (and not to the estate) if the tax was actually paid by the beneficiary to such taxing authorities;

(4) If the deduction has not been claimed by the estate nor by the beneficiary, it shall be allowed as a deduction only to the person (either the estate or the beneficiary) by whom the tax was paid to such taxing authorities, and only if a claim for refund or credit is filed within the period of limitation properly applicable thereto;

(5) Notwithstanding the provisions of paragraphs (1), (2), (3), and (4) of this subsection, if the claim of the deduction by the estate is barred by the statute of limitations, but such claim by the beneficiary is not so barred, the deduction shall be allowed to the beneficiary, and if such claim by the beneficiary is barred by the statute of limitations, but such claim by the estate is not so barred, the deduction shall be allowed to the estate.

(b) As used in this section, the term " claimed " means claimed—

(1) In the return; or

(2) In a claim in abatement filed in respect of an assessment made on or before June 2, 1924.

(c) This section shall not affect any case in which a decision of the Board of Tax Appeals or any court has been rendered prior to the enactment of this Act, whether or not such decision has become final.

As the provision was originally introduced in the House bill it contained no such matter as that of subsection (a) (5) and subsection (b). It provided only for deductions " claimed in the return." The report of the House Committee on Ways and Means in respect of this section was as follows:

SEC. 706. DEDUCTION OF ESTATE AND INHERITANCE TAXES—RETROACTIVE.

Section 214(a)(3) of the Revenue Act of 1926 and corresponding provisions of prior revenue Acts permit a deduction, from gross income in computing the net income subject to tax, for taxes paid or accrued during the taxable year. Obviously this provision applies only to taxes imposed upon the taxpayer, and does not permit the deduction of taxes paid by a volunteer. Extraordinary difficulty has been encountered in applying this deduction in the case of estate, inheritance, legacy, and succession taxes, imposed by a State, Territory, or a foreign country. These taxes are usually paid by the executor of the estate. Under the regulations of the department the deduction was allowed the estate, in computing its income tax, if the tax was considered as an estate tax, and was allowed as a deduction to the beneficiary if the tax was considered to be an inheritance, legacy, or succession tax. As a result of recent Supreme Court decisions (*Keith* v. *Johnson*, and *United States* v. *Mitchell*), redeterminations of the deductions claimed by the estate by the beneficiary will be necessary unless the situation is remedied by retroactive legislation. Consequently your committee deems it advisable to insert section 705 in the bill, the general effect of which will be to ratify what the taxpayers have done and to prescribe specific rules for future action.

The Senate on the floor struck out the requirement that the only cognizable claim for the deduction should be that made in the return and inserted (b) instead. It also added (a) (5). Thereafter the report of the Conference Committee of both Houses contained the following:

Amendment No. 210: The House bill contained retroactive provisions removing the uncertainty of the present law as to the deductibility, in computing net income, of amounts paid as estate, inheritance, succession, or legacy taxes, and validated the deductions claimed in the return of the taxpayer, and provided for the case where the deduction was claimed by both the estate and the beneficiary and the case where neither claimed it. The Senate amendment adopts the provisions of the House bill and extends them to cases where the deduction was claimed by a claim in abatement, and in order to make it certain that the deduction will be allowed either to the estate or to the beneficiary in any event, the Senate amendment allows the deduction to the estate if the beneficiary is barred from filing a claim for refund by the statute of limitations, and vice versa. This provision does not permit the filing of a claim for refund, however, if the period of limitation has expired; and the House recedes.

The bill was thereupon enacted containing the language as above quoted.

Relying upon this provision, the petitioners contend that, since the deductions of both Federal estate and State inheritance taxes were properly available either to the estate or the beneficiary, but have since become barred to the estate, the situation is within the terms of subdivision (a) (5) of the statute so as to make the deduction now allowable to the petitioners as beneficiaries within the meaning of the statute. From the stipulation it appears that for the years 1920 and 1921 the estate filed returns and that no waivers in its behalf have since been filed. As to those years, therefore, any claim which the estate might have in respect of the allowance of

this deduction would be barred by the statute of limitations. Thus, by subsection (a) (5) the deductions for 1920 and 1921 should properly be allowed to petitioners in the proportionate amounts to which, under the stipulated facts, they are severally entitled.

As to 1922 and 1923, however, it is stipulated that no returns were filed by the estate. Hence, the statutory period of limitations has never begun, and, consequently, has never expired and any claim of the estate is not barred. As to those years subsection (a) (5) can have no application. It is stipulated that the deduction has not been claimed either by the estate or the beneficiaries in the manner defined in subsection (b), except that the beneficiaries have claimed their proportionate deductions of the percentage of State inheritance taxes, which by their contract was properly chargeable against them. As to the remaining 60 per cent of inheritance taxes and the entire amount of Federal estate taxes for such years, no deduction has been claimed by either. Under such circumstances subsection (a) (4) is applicable, wherein it is provided that the deduction shall be allowed only to the person by whom the tax was paid to the taxing authorities. Since it is stipulated that these taxes have all been paid to the taxing authorities by the estate, it follows that there is no provision in section 703 or in any other section which has been called to our attention to authorize the allowance of the deduction to the beneficiaries. As to these years, therefore, the petitioners' contention fails and the respondent is sustained.

It has not been overlooked that the stipulation is ambiguous in respect of the year 1923. It provides in one place that claim for the deduction was made by the estate in its return and in another place expressly states that no return was filed. In this ambiguity of fact the Board is helpless and since the burden rests upon the petitioner the ambiguity must be resolved against it.

As to the petitioner George R. Burt, Docket No. 19609, it is confessed by petitioner's counsel in accordance with the stipulation that since his tax liability is determinable on the accrual basis, the principle applied in *Ernest M. Bull, Executor*, 7 B. T. A. 993, requires that the deduction be limited to the year 1919, in which the taxable testamentary transfer occurred. The record discloses no facts which would bring the year 1919 within the issues before the Board. The deficiency notice contains a determination of deficiencies for only 1921, 1922, and 1923 and a determination of no deficiency in respect of 1920. The year 1919 is not mentioned. No determination in this proceeding can, therefore, be made as to the year 1919 and it is clear that petitioner is entitled to no deduction in respect of the estate or inheritance taxes for any of the years properly before the Board.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*