GRACE MCBRIDE CRILE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43136.   Promulgated September 22, 1932.

*John B. Fackler, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

OPINION.

GOODRICH: Petitioner contends that $7,336.15 should not be included in her 1924 income, first, because she did not, in fact, receive it and, next, because it was not distributable to her from the trust. In the alternative she contends that, if it was distributable to her and a part of her income, the amount should be treated as a capital expenditure made to acquire and retain the right to income of the trust estate and she should be allowed to recoup this capital expenditure from the income thereafter so received by her from the trust estate.

In view of section 219 (b) (2), Revenue Act of 1924, which contains special provisions relating to the determination of the taxable income of a trust, it is clear that there must be included in petitioner's income the amount of income of the trust which is concurrently distributable to her. The issue before us is, therefore, resolved into the question of whether the amount here in question was income of the trust which was currently distributable to the beneficiaries.

This trust was subjected to serious attack, both as to its validity and as to a claim against its assets, and the respondent concedes that the trustee acted under authority of the law of Ohio in filing a petition for the purpose of determining under the trust instrument the liability of the beneficiaries for the payment of the estate tax (sec. 10857, General Code of Ohio), and we think it was not only the right, but the duty of the trustee to defend the trust from the attack upon its validity which, if successful, would have destroyed it.

Of the $29,344.60 paid out by the trustee in connection with this suit, the trustee paid its attorney $1,635.60, and in settlement thereof, $11,671, a total of $13,306.60. By this settlement the entire controversy was ended. This was a necessary expense incurred by the trustee in connection with the trust property, and, under the terms of the trust instrument and the decisions of the Ohio courts (cf. *Weir* v. *Weir*, 18 O. C. D. 199; *Ingham* v. *Lindeman*, 37 O. S. 218; *Merrick* v. *Merrick*, 37 O. S. 127; *Jackson* v. *O'Brannon*, 14 O. S. 177), was properly payable by the trustee from the income of the trust before any income was distributed to the beneficiaries, and, since only the "net income" from the trust was distributable to the beneficiaries, this amount was never income distributable to the beneficiaries.

The fact that the beneficiaries authorized the payment of the compromise sum and the expense of trustee's counsel is not controlling. The trustee had authority to make such payments without their acquiescence, which served merely to indicate that the parties interested deemed the settlement necessary and to protect the trustee from any future question about the matter.

In determining the distributable net income of the trust for 1924 there should be deducted the items of $11,671 and $1,635.60, totaling $13,306.60, and from petitioner's gross income, one-fourth thereof, or $3,326.65.

In the disallowance of the fees totaling $16,038 paid to counsel employed by the individual beneficiaries, we sustain respondent. This expense was incurred, not by the trustee, but by the individuals. It was not a charge against nor a necessary expense of the trust. The fact is that these attorneys were employed not by the trustee which had other counsel, but by two beneficiaries of the trust to look after their personal interests. No doubt their services were valuable, and very likely were of benefit to the trustee and its counsel as well as to the beneficiaries, but that does not make them representatives of the trustee. Consequently, the charges for their services can not be classed as necessary expenses in connection with the trust, nor deducted in determining the distributable net income of the trust. They were personal expenditures of the individual beneficiaries, made in an effort to protect their rights to income from the trust, and, as such, have no place in the provisions of the statute setting out specifically allowable deductions from the gross income of an individual and therefore must be classed as a nondeductible personal expense. The fact that the charges were paid, upon authorization of the beneficiaries, by the trustee from their shares of the distributable income of the trust is not material. In this situation the trust income may be said to have been constructively distributed to them,

cf. *Marion Stone Burt Lansill,* 17 B. T. A. 413; *Emma Burt Hutchins,* 20 B. T. A. 1227; and, under section 219 (b) (2) of the Revenue Act of 1924, the amounts should be included in computing their individual net incomes whether distributed or not.

Nor do we agree with petitioner's contention that these payments may be classed as capital expenditures to be thereafter recouped, in support of which counsel cites, among other cases, *Allen* v. *Brandeis,* 29 Fed. (2d) 363; *Dobbins* v. *Commissioner,* 31 Fed. (2d) 935; *Frederick McLean Bugher,* 9 B. T. A. 1155. The two decisions first cited are clearly distinguishable from the case at bar and have no bearing here. In the *Bugher* case the taxpayers were engaged in carrying on a trade or business, in connection with which the expenditures were made for the purpose of acquiring or enlarging the rights to income or in property. Here, even should we regard the operation of the trust as a business, the beneficiaries were not so engaged, but were merely passive recipients of income from the trust, and expenditures made to retain such income must be regarded as a personal cost of protecting one's property, for which the statute makes no allowance. The payments did not serve to create, change, or acquire any rights to the income, for these were granted by the trust instrument, and the relinquishment of these sums by the beneficiaries served merely to remove the threat to take away the rights which they had.

The issue before us is similar in principle to that which was before the Circuit Court of Appeals in *Commissioner* v. *Field,* 42 Fed. (2d) 820, reversing, on this point, *Marshall Field,* 15 B. T. A. 718. In disposing of the question, L. Hand, Judge, said:

* * * All that happened was that Field and the trustees got into a dispute about the meaning of the will; and Field succeeded in getting the court to take his view. We cannot for that reason say that the court's action changed what had all along been his rights; it did not create them; he had them already. We do not of course forget that a disputed right is not for practical purposes an available right at all; or that in fact Field was helpless until the decree passed. Nevertheless, we cannot take the judgments of a court as creating property without confusing their function, and substituting juristic metaphysics for these conventions on which in the end most of the law stands. For instance, precisely as good an argument might be made in favor of fees paid in the defense of property in possession, a freehold or a share of stock. Without them the possessor's rights would succumb to the attack; it would follow that any subsequent income is acquired at that cost. Again, if the property be a leasehold or an annuity, it is a " wasting asset," and the fees must be somehow prorated; if it be not " wasting," they will be part of the cost upon a sale. So put, we should suppose that nobody would be hardy enough to maintain that an attorney's fee was a " capital expenditure." We cannot make over fundamental notions in the interest of a more searching theoretic analysis.

Cf. *Clara A. McKee,* 19 B. T. A. 430; *Bliss* v. *Commissioner,* 57 Fed. (2d) 984; *Clara Hill Lindley,* 26 B. T. A. 741.

*Judgment will be entered under Rule 50.*