## Appeal of ORMSBY McKNIGHT MITCHEL.                Docket No. 48.

An assessment made prior to the enactment of the Revenue Act of 1924 through mistake, and while an appeal was pending before the Commissioner, undetermined, is not such a determination that any assessment should be made as will deprive the Board of jurisdiction of an appeal based upon a letter of the Commissioner mailed after the enactment of said Act, disposing of the case on the merits.

The provisions of subdivision (e) of section 8 of the Revenue Act of 1916 as amended by subdivision (1) of section 1204 of the Revenue Act of 1917, and section 218(a) of the Revenue Act of 1918, providing that individuals carrying on business in partnership shall be liable for income tax in their individual capacity, and requiring the distributive share of each partner, whether distributed or not, of the net income of the partnership for the taxable year, to be included in computing the net income of such partner, can not be modified or changed by agreements made by a partner with a third person, disposing of a portion of his distributive share of the partnership income, so as to exclude any part of such distributive share in computing his individual net income.

Submitted October 31, 1924; decided December 11, 1924.

*Herman Aaron,* Esq., for the taxpayer.

*Robert A. Littleton,* Esq. (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This case was heard upon a stipulation of facts from which the Board makes the following:

### FINDINGS OF FACT.

1. That during the years 1917, 1918, and 1919, and for some time prior thereto, the petitioner herein, Ormsby McKnight Mitchel, and one Yale Kneeland were copartners carrying on business in the city of New York under the firm name and style of Power, Son & Co., and that the proportionate interests of said partners in the said business were 51 per cent and 49 per cent, respectively.

2. That on the first day of January, 1916, the said Ormsby McKnight Mitchel made and entered into an agreement with Elizabeth P. Mitchell, his wife, as follows:

Agreement between Ormsby McK. Mitchel, party of the first part, and Elisabeth P. Mitchel, party of the second part.

The party of the first part being a member of the firm of Power, Son & Co., composed of Ormsby McK. Mitchel and Yale Kneeland.

Now, for valuable consideration by each of the parties to the other in hand paid, the receipt of which is acknowledged, the parties hereto agree to form a subpartnership as to the profits which shall accrue to the party of the first part from the aforementioned firm upon the conditions and agreements hereinafter set forth, to wit:

First. The party of the second part shall be entitled to one-half of the profits which shall come to the party of the first part from said firm, and shall likewise be liable to pay to the party of the first part one-half of the losses which he may sustain by reason of his partnership in said firm. The term " profits " herein mentioned shall include interest or allowance to the party of the first part for capital invested by him in said firm and for accumulations to his credit therein, including any such capital or accumulations as may be represented by property which as between the parties hereto is the property of the party of the second part. Upon receiving the profits herein mentioned the party of the first part agrees to hold for and pay to the party of the second part the share thereof to which she shall be entitled hereunder, and upon the sustaining of the losses herein provided for the party of the second part agrees to pay to the party of the first part the share thereof for which she shall be liable hereunder.

Second. Settlements shall be had between the parties hereto annually unless this agreement shall be terminated prior to the expiration of any year, when a settlement shall be had upon the termination of this agreement.

Third. This agreement shall take effect as of the beginning of the fiscal year and may be terminated by either party at any time.

Dated, New York, January 1, 1916.

|  |  |
|---|---|
| (Sgd.) | O. M. MITCHEL. |
| (Sgd.) | ELIZABETH P. MITCHEL. |

Upon the making of said agreement, Power, Son & Co. were duly notified thereof, and the share of Elizabeth P. Mitchel under the agreement was paid over or credited to her as it accrued.

3. That for the years 1917, 1918, and 1919 Ormsby McKnight Mitchel included in his income-tax returns in each of the above years as income derived from the partnership of Power, Son & Co.

one-half of the income attributable to his 51 per cent interest in the profits of that partnership. The Commissioner proposed to include in petitioner's income the entire 51 per cent of the profits of Power, Son & Co. for each of the years in question and to assess against the petitioner an additional tax for the year 1917 of $15,945.88; for the year 1918 of $55,749.71, and for the year 1919, $55,214.11.

4. That on August 11, 1922, the Commissioner first proposed the assessment of the additional tax above set forth, and a hearing was held before the Income Tax Unit on October 4, 1922, at which time the petitioner and his counsel were present and were heard. By letter dated November 3, 1922, the Commissioner notified the taxpayer that the tax proposed to be assessed by letter of August 11, 1922, would be assessed at the expiration of 30 days from the date of said letter, unless within such period the taxpayer availed himself of his right to appeal to the Commissioner. On November 29, 1922, and within 30 days from said letter of November 3, 1922, an appeal to the Commissioner from the letter of November 3, 1922, was duly filed. The papers constituting the said appeal were either lost or misplaced in the Commissioner's office, and while the appeal was pending the assessments proposed in the letter of November 3, 1922, were, through error and not because of the belief of the Commissioner that the collection of the amount due would be jeopardized by delay, placed on the assessment list for collection and forwarded to the collector of internal revenue for the district wherein the returns of taxpayers were filed. On February 19, 1923, taxpayer's counsel addressed a letter to the Commissioner, inclosing a copy of the notice of appeal with its accompanying papers and a copy of the registry receipt and return receipt for the original appeal. On April 23, 1923, the taxpayer filed with the collector for his district claims in abatement against the assessment for each of the years in question. Upon the showing made by the taxpayer's counsel in letter of February 19, 1923, and the evidence adduced therewith, the appeal filed November 29, 1922, was heard and considered by the Commissioner, and on November 30, 1923, the Commissioner denied the appeal, but no assessment was then or later made. Subsequently a request was made of the Commissioner by the taxpayer to reconsider the case on his claims for abatement. The case was referred by the Commissioner to the Solicitor, who, after a hearing at which counsel for the taxpayer was present, advised the Commissioner that his decision of November 30, 1923, should be followed. Thereafter, and by letter dated July 23, 1924, the Commissioner notified the taxpayer herein that his appeal was denied, and that in view of the denial of the appeal, which was the basis of the claims for abatement, the claims were rejected. The petitioner has appealed to the Board from the Commissioner's letter of July 23, 1924.

#### DECISION.

The Board determines that there is a deficiency for the year 1917 in the amount of $15,945.88; for the year 1918 in the amount of $55,749.71; and for the year 1919 in the amount of $55,214.11, and the determination of the Commissioner is hereby approved.

### OPINION.

MARQUETTE: The Commissioner has attacked the jurisdiction of the Board to determine this appeal upon the grounds (1) that the taxes herein were assessed prior to the passage of the Revenue Act of 1924, and that the correctness or review of such an assessment is not justiciable before this Board; and (2) that the letter of July 23, 1924, upon which the taxpayer bases his appeal, was not such a deficiency letter as gives to the taxpayer a right to institute and maintain this appeal, but was, in fact and in substance, a refusal on the part of the Commissioner to allow claims for abatement of taxes assessed.

Section 250(d) of the Revenue Act of 1921 provides in part as follows:

If upon examination of a return made under the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, or this Act, a tax or a deficiency in tax is discovered, the taxpayer shall be notified thereof and given a period of not less than 30 days after such notice is sent by registered mail in which to file an appeal and show cause or reason why the tax or deficiency should not be paid. Opportunity for hearing shall be granted and a final decision thereon shall be made as quickly as practicable. Any tax or deficiency in tax then determined to be due shall be assessed and paid, together with the penalty and interest, if any, applicable thereto, within 10 days after notice and demand by the collector as hereinafter provided, and in such cases no claim in abatement of the amount so assessed shall be entertained: *Provided*, That in cases where the Commissioner believes that the collection of the amount due will be jeopardized by such delay he may make the assessment without giving such notice or awaiting the conclusion of such hearing.

The jurisdiction of the Board in respect of taxes under prior revenue acts, provided for in section 280 of the Revenue Act of 1924, is as follows:

Sec. 280. If after the enactment of this Act the Commissioner determines that any assessment should be made in respect of any income, war profits, or excess profits tax imposed by the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, or the Revenue Act of 1921, or by any such Act as amended, the amount which should be assessed (whether as deficiency or as interest, penalty, or other addition to the tax) shall be computed as if this Act had not been enacted, but the amount so computed shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including the provisions in case of delinquency in payment after notice and demand) as in the case of the taxes imposed by this title, except as otherwise provided in section 277.

The facts show that on November 29, 1922, and within 30 days after November 3, 1922, the date of the letter proposing to assess the tax herein, the taxpayer filed an appeal with the Commissioner from the proposed assessment and that while this appeal was pending, undetermined, the Commissioner, through error, assessed the taxes. The statute does not contemplate nor does it authorize an assessment in such circumstances unless the Commissioner believes that the collection of the amount due will be jeopardized by delay and, admittedly, such was not the case, or the reason for the assessment herein. The taxpayer was entitled to a hearing on his appeal prior to the assessment, except in the circumstances stated above, and we do not think that an assessment made under the facts disclosed in this case has any validity to deprive the Board of jurisdiction.

Section 280 of the Revenue Act of 1924 confers jurisdiction upon the Board in respect of taxes under prior Acts where, after the enact-

ment thereof, the Commissioner determines that any assessment should be made; and may, by its terms, withhold jurisdiction in cases where such determination was made prior to that event, but we do not think the latter question is before us in this case. While it has been argued that the fact of assessment presupposes that a determination to assess has been made, we can not overlook the fact that the assessment herein was made by mistake and against the express provisions of the law, and we do not think there was a determination prior to the enactment of the Revenue Act of 1924 that any assessment should be made, in so far as this so-called assessment is concerned.

The next point argued is that the letter of July 23, 1924, was not such a deficiency letter as will sustain the appeal herein, but was, in fact, a denial by the Commissioner of the claims for abatement filed against the assessments previously made. We do not understand the Commissioner as contending that the filing of the claims for abatement estopped the taxpayer from denying the validity of the assessments or from denying that there has been a determination that any assessment should be made. The taxes having been placed on the assessment list and forwarded to the collector, the collection thereof could only be postponed by the Commissioner by withdrawing the assessment, or by the taxpayer, by filing claims for abatement; and the latter course was followed, as we understand, at the instance of the Commissioner's office.

The facts show that the appeal filed with the Commissioner was heard by his agency, the Committee on Appeals and Review, and that on November 30, 1923, a decision was rendered by that body and approved by the Commissioner denying the taxpayer's appeal. The taxpayer's counsel thereupon requested the Commissioner to reconsider the case on his claims for abatement. Such application was entertained by the Commissioner; the case was reopened, and a hearing was held before the Solicitor, at which hearing taxpayer's counsel was present and heard. Thereafter the Solicitor advised the Commissioner that, in his opinion, the decision of the Commissioner of November 30, 1923, was correct and should be followed. On July 23, 1924, the taxpayer was notified by the Commissioner that his appeal was denied and the claims for abatement based thereon were rejected.

Upon these facts we are not disposed to hold that the Commissioner had determined, prior to the enactment of the Revenue Act of 1924, that any assessment should be made in respect of the taxes in controversy. The case was reopened for further hearing after the decision of the Committee on Appeals and Review, and while the Commissioner may have been advised thereafter that the former decision should be followed, the only evidence of his determination that an assessment should be made was contained in the letter of July 23, 1924. Whether the Commissioner has determined that any assessment should be made is a question of fact and the only evidence of such determination is an assessment made pursuant to the statute, or a letter setting forth the determination on the merits, however expressed. That such determination is not expressed in an adopted form is immaterial, provided it determines the case on the merits and disposes of the contentions of the taxpayer. This effect

must be given to the letter of July 23, 1924, upon which the appeal herein is based, and the motion to dismiss for want of jurisdiction is therefore denied.

Coming now to the merits of the case, we have found that the taxpayer was a member of the partnership of Power, Son & Co. with an interest of 51 per cent therein, and that on January 1, 1916, he entered into an agreement with his wife, whereby for a valuable consideration a so-called subpartnership was created wherein the wife was entitled to one-half the profits, which should come to the taxpayer from said partnership, and should likewise be liable to pay to him one-half the losses which he might sustain by reason of his partnership in said firm. The question herein is as to the effect which must be given to this agreement. It is not contended that the agreement had the effect of making Elizabeth P. Mitchel a member of the partnership and no contention is made as to its validity as between the parties. The only question we have to determine is whether, by virtue of the agreement, one-half the income of the taxpayer from his interest in said partnership was so diverted by the agreement that it did not constitute income to him within the meaning of the law. It is admitted that only one-half thereof was returned by him for taxation as income. If his position is sound the determination of the Commissioner is incorrect, otherwise the amounts proposed to be assessed are admitted to be correct.

By subdivision (1) of section 1204 of the Revenue Act of 1917, subdivision (e) of section 8 of the Revenue Act of 1916 was amended to read as follows:

(e) Persons carrying on business in partnership shall be liable for income tax only in their individual capacity, and the share of the profits of the partnership to which any taxable partner would be entitled if the same were divided, whether divided or otherwise, shall be returned for taxation and the tax paid under the provisions of this title * * *.

Section 218(a) of the Revenue Act of 1918 provides:

That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *.

These sections of the law provide in effect that the distributive share of the partners in the net income of the partnership, whether distributed or not, shall be included in computing the net income of each partner. In this case the positive provisions of the statute are sought to be nullified by the private agreement of one of the partners. Clearly, under the statute, the income derived by the partnership must be returned for taxation as the income of the respective partners in accordance with their distributive shares and can not be diverted to become the income of someone else by agreement or otherwise. No one is permitted to make his own tax law and if it were permitted to modify the express provisions of a taxing statute by agreement any taxpayer could say what should or should not be income. To merely state the proposition is to expose its fallacy and it is of no importance that the taxpayer, as stated in his brief, believes in the community property theory in effect in some of the States. The answer to such a contention is that even if it would effect the result desired it is not in force in New York State and

that a community created by positive law has attributes which can not be given effect in a community created by agreement. As between the parties to this agreement it may be legal and enforceable and the taxpayer may be a trustee of one-half the income he receives from the partnership of which he is a member and compellable to account therefor, but this is of no materiality in considering the question before us. The income from taxpayer's interest in the partnership is first income to him, and no matter how he tries to dispose of it or does dispose of it, it is taxable to him as income from his interest therein. It does not alter the situation to say that as soon as income arises in the partnership at that instant it becomes the property of the grantee, as this is mere assertion. The fact is that before it becomes the property of the grantee it is income, within the meaning of the law, to the grantor, and the statute recognizes this fact when it requires the income of the partnership to be included as the income of the partners in their individual returns according to their respective shares therein. The fallacy of the contention arises from the failure to take account of the fact that the taxpayer is contracting to dispose of something which must first be his before it becomes the property of anyone else. If the contention made should prevail, the taxing law would be a nullity and an act of Congress imposing taxes made impotent at the will of the taxpayer. If he can escape taxation on one-half the profits of the partnership by agreement, there is no reason why, by another agreement, he can not escape taxation on the other half; and if this taxpayer can do so there is no end to the agreements which may be made, and income as such will cease to be an object of taxation.

As we have attempted to point out above, the defect in the case is the failure to recognize the fact that the distributive share of the taxpayer in the profits of the partnership constitutes income to him before it is disposed of. This is the effect of the act and is recognized by the agreement itself, for in the first article thereof it provides: " The party of the second part shall be entitled to one-half of the *profits which shall come to the party of the first part from said firm.*" It is true that a person is not compelled to so use his property that it will return the greatest amount of tax and may lawfully convert his taxable property into forms which are not taxable even though his only purpose is to escape taxation. The taxpayer herein has attempted to do just this thing, but the means employed have failed to accomplish his object. When Congress provides that a person in a certain status shall be subject to taxation in a particular manner we do not believe that person can, at one and the same time, retain such status and by agreement relieve himself from the effect of the act.

We hold that the taxpayer's entire distributive share of the net income of the partnership of Power, Son & Co. in the years 1917, 1918, and 1919 should be included in computing his net income for those years, and the determination of the Commissioner to that effect is approved.