## WILLIAM ERNEST SEATREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 22094, 33640.   Promulgated January 27, 1932.

*Edward B. Burling, Esq.,* and *William Merrick Parker, Esq.,* for the petitioner.

*John D. Foley, Esq.,* for the respondent.

398

GOODRICH: It is well settled that an assignment of income does not relieve the assignor of the tax thereon, but that if property or property rights are assigned the income subsequently arising therefrom is not taxable to the assignor, for the reason that the property no longer belongs to him and therefore the income from such property belongs, not to him, but to the new owner. *J. V. Leydig*, 15 B. T. A. 124; affd., 43 Fed. (2d) 494; *Wallace Huntington et al.*, 15 B. T. A. 851; *Marshall Field*, 15 B. T. A. 718; *Grace Scripps Clark*, 16 B. T. A. 453; *Arthur F. Hall*, 17 B. T. A. 752; reversed 54 Fed. (2d) 443; *Edward T. Blair*, 18 B. T. A. 69; *L. Brackett Bishop*, 19 B. T. A. 1108; affd., 54 Fed. (2d) 298; *Eugene Siegel, Executor*, 20 B. T. A. 563; *John Leo Stack*, 22 B. T. A. 707; *Lucas* v. *Earl*, 281 U. S. 111; *Corliss* v. *Bowers*, 281 U. S. 376; *Mitchell* v. *Bowers*, 15 Fed. (2d) 287; *Bing* v. *Bowers*, 22 Fed. (2d) 450; *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 436; *Young* v. *Gnichtel*, 28 Fed. (2d) 789; *David Copland*, 15 B. T. A. 238; reversed, 41 Fed. (2d) 501.

The difficulty in applying this rule lies in determining in each case precisely what has been assigned. Upon consideration, it is our opinion that in the case at bar, petitioner transferred, not income, but a property right. It is conceded that petitioner and the other five partners named in section 2 of Article IV were largely responsible for the establishment, growth, and good will of the firm and that the purpose of the provisions of that section was to compensate them upon their retirement, or their estates in event of death, for their respective interests in that good will. Their interests were in the nature of capital assets. The payments provided were in the nature of a three-year annuity. It is true as respondent points out, that the amounts of the payments were to be measured by the future profits of the firm and that they might be great or small accordingly as the partnership prospered. But the method of measuring the payments does not determine the nature of the source thereof. The partnership contract gave petitioner a right to four shares of the firm profits for a period of three years after his retirement. That right was a property right, a chose in action, and it could be transferred or assigned *in praesenti*. It was independent of the rendition by him of any further services to the firm and it was to vest in him immediately upon his retirement or in his heirs in event of his death. It was not the right of a partner while such to a share of partnership profits, but was a contractual right to compensation for his interest in the good will of the firm, built up by his services in the past, accruing to him in consideration of his retirement, whether by his own volition or by death. In law it is of the same nature

as an interest in a contract of sale or lease (*Eugene Siegel, supra; Charles W. Walworth*, 6 B. T. A. 788) ; a share of an estate (*Young* v. *Gnichtel, supra; O'Malley-Keyes* v. *Eaton, supra*) ; royalties (*Wm. I. Paulson et al., Executors*, 10 B. T. A. 732, and *J. V. Leydig, supra*); a right to income from a trust (*Edith H. Blaney*, 13 B. T. A. 1315; *F. C. Hubbell*, 14 B. T. A. 1040), and other property rights or choses in action which have heretofore been considered and held capable of complete alienation.

It is true that the instrument in precise language did not assign the contract itself. Petitioner did not intend to assign the whole of the contract for he had other payments due him thereunder—his capital investment with interest and his share of the firm profits earned prior to his retirement—which he retained for himself. We think, however, that it, in effect, assigned an interest therein. The instrument describes the subject of the assignment as " all my right, title and interest, in and to four undivided shares of the profits or income " arising under the partnership agreement. When read with the articles of partnership, there is no ambiguity. After his retirement, petitioner's only right to the earnings upon four shares of the firm arose under section 2 of Article IV. We think the granting clauses of the assignment sufficient to transfer that right and interest and, as we consider them in the nature of a capital asset, we think the assignment thereof was equivalent to an assignment of petitioner's interest in that part of the contract of partnership. Cf. *L. Brackett Bishop, supra; Arthur F. Hall, supra.* Beyond doubt the assignor was divested of all right thereunder; beyond doubt the assignee could have demanded an accounting from the firm, and had the right to examine its books and records upon reasonable suspicion that it had failed to comply strictly with the terms of the agreement. Such a right, with respect to section 2 of Article IV, we think, was lost to petitioner by his assignment, for he had relinquished all ownership in the property right created by that section of the agreement when he transferred it by an irrevocable instrument.

However, petitioner had not divested himself of his contractual right before the payments for the first year were due thereunder. It is stipulated that the assignment was executed and delivered to the Equitable Trust Company on June 29, 1922. We refuse to be bound by that stipulation, for it appears to be contrary to fact as disclosed by the record. The instrument was executed in Paris on June 29, 1922, but it was accepted by the Trust Company on August 3, 1922, in New York. Petitioner testified that the matter had been taken up with the Trust Company's foreign agents, but it does not appear that the instrument was delivered or accepted by them on June 29. On the contrary, the testimony is that it was mailed by peti-

tioner in Paris to May in New York, who delivered it to the Trust Company. As this transaction was clearly in the nature of a gift, the delivery of the instrument to and the acceptance of it upon its terms by the trustee was essential to the completion thereof. Despite the stipulation, we are convinced that the transfer was not completed before August 3, 1922. The record does not disclose the basis upon which petitioner kept his accounts for the year 1922, nor does it disclose any basis of cost, beyond that of services rendered in the past, for petitioner's right to four shares of the firm earnings after his retirement. Therefore, for lack of evidence proving the same to be erroneous, we sustain respondent's action in including in petitioner's income for the year 1922 the sum of $22,378.30, regarding the assignment as effecting a transfer of accrued income in that amount in that year.

We are not impressed by respondent's contention that, because the recited nominal consideration of $1 was not in fact paid, there was no valuable consideration for the assignment and that, consequently, petitioner could have avoided it had he so desired. As we have indicated, we regard this transfer as a gift, and a gift needs no consideration. Moreover, the instrument, which was irrevocable, also recited "other valuable considerations" and, in such case, the fact that the nominal consideration was not paid does not establish a failure of consideration. *Lessler* v. *Deloynes*, 135 N. Y. S. 948; 150 App. Div. 868; *Williams* v. *Whittell*, 74 N. Y. S. 820; 69 App. Div. 340.

Furthermore, the petitioner could not have avoided the assignment by claiming that the instrument was without consideration, even if that were true. The law of New York is controlling upon this point. In the case of *Hull* v. *Hull*, 172 App. Div. 287; 158 N. Y. S. 743, the plaintiff was entitled to a residuary interest of one seventh under his father's will. He assigned his interest by an instrument under seal, reciting a valuable consideration, to two of his brothers and executed and delivered the assignment to another brother, the defendant, who was the executor. Thereafter, he claimed the assignment was without consideration, and that no consideration was ever given by the defendant or paid by the assignees. The court in its opinion stated:

While it is true that under the provisions of Section 840 of the Code of Civil Procedure an executory instrument under seal is only presumptive evidence of consideration, which may be rebutted, an assignment is not an executory instrument. It is completed by delivery of the assignment, and the statute has not changed the rule of the common law with respect to such instruments. The allegations of the complaint that the instrument was without consideration can, therefore, have no bearing upon the question. The declaration that the instru-

ment was signed and delivered and the instrument itself being set forth and being under seal, it is conclusive upon the plaintiff insofar as the question of consideration is concerned.

In the light of this decision it is clear that petitioner could not have revoked his assignment to the Equitable Trust Company on the theory that there was no valuable consideration for it, since the assignment was signed, sealed and delivered to the Equitable Trust Company, which, in writing accepted the same upon its terms.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

MORRIS, LANSDON, STERNHAGEN, TRAMMELL, ARUNDELL, and MURDOCK dissent.