JAMES McDONALD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52329.   Promulgated August 22, 1933.

*H. C. Kilpatrick, Esq.*, for the petitioner.
*Maxwell M. Mahany, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The sole issue presented for decision is whether the amount of $25,000 paid to the petitioner's wife in 1927 by the trustees of his father's estate, pursuant to the agreements set forth in the findings of fact, was income of the petitioner. The petitioner says it was not, contending that under the will he was the owner of alienable property in the nature of an equitable estate for years, that the agreements with his wife constituted an irrevocable assignment of an undivided interest in that estate, and that amounts paid to her under such an assignment are not income to him.

The nature of petitioner's interest in the estate is defined by the decree of the Court of Appeals of the District of Columbia, namely, a present vested interest in an undivided one half of the residuary estate, entitling the petitioner to receive one half of the cash income during the life of the trust, and one half of the corpus upon its termination when his oldest child living at the testator's death reached the age of 30 years. *McDonald* v. *Maxwell*, 12 Fed. (2d) 822. His interest in the income—his right to the income—was an equitable estate for years and present property, alienable at common law like any other, in the absence of restraint on alienation. *Commissioner* v. *Field*, 42 Fed. (2d) 822; *Edith R. Wood*, 27 B.T.A. 1308; District of Columbia Code, secs. 1, 1017, 1030, 1032, 1036, 1640; *Lisner* v. *Hughes*, 49 App. D.C. 40. It does not appear that the will imposed any restraint on alienation.

If the agreements in question had the effect of divesting the petitioner absolutely and irrevocably of an undivided part of his equitable estate in the income, the petitioner should prevail. *Commissioner* v. *Field*, 42 Fed. (2d) 822; *O'Malley-Keyes* v. *Eaton*, 24 Fed. (2d) 820; *Young* v. *Gnichtel*, 28 Fed. (2d) 789; *Edith H. Blaney*, 13 B.T.A. 1315; *Grace Scripps Clark*, 16 B.T.A. 453. This is on the well settled principle that, while an assignment of income does not relieve the assignor of the tax thereon, an assignment of property or property rights does relieve the assignor of the tax on income subsequently arising therefrom, since both the property and the income no longer belong to him. *William Ernest Seatree*, 25 B.T.A. 396; *Hazel T. Power*, 23 B.T.A. 428; affd., 61 Fed. (2d) 625; certiorari denied, 288 U.S. 612; *Bishop* v. *Commissioner*, 54 Fed. (2d) 298.

No contention is made by the petitioner that he assigned any part of his interest in the corpus of the estate, and it is necessary to consider only whether the agreements divested him of part of his interest in the income.

In our opinion, the agreements do not disclose any transfer of the right to receive income. The first agreement of December 11, 1924,

as well as the subsequent modifications, was primarily an agreement of the petitioner to pay his wife the fixed sum of $400,000 in full settlement of any claims on his property which she might have by reason of the marriage relation. When the promise was made the petitioner was assured of part of the estate, either as heir or under the will. The amount was payable only when he became "entitled to his share of the estate ", with the right to pay prior thereto if he so elected. To assure payment he in present terms assigned to his wife " an interest in his share of the property of the estate " in the amount of $400,000. Clearly, the latter provision was not an absolute and irrevocable assignment. If petitioner had elected to pay the full amount from his individual funds prior to settlement of the suit, or if he had paid out of property received from the trustees, the assignment would have become inoperative. Furthermore, the assignment is of part of petitioner's share of the property, and this might be construed to include his share of the corpus rather than of the income.

However this may be, we believe the petitioner's rights must be determined in the light of the 1925 and 1926 agreements. Those agreements were made on the condition, among others, that the court of appeals should adjudge the petitioner to be entitled to one half the accumulated and future income and that an arrangement should be made whereby petitioner should be paid his share of the then accumulated income and his share of the future income. The conditions happened and the agreements became operative. They provided for payment out of the accumulated income of $100,000, to be credited on the obligation of $400,000; "that said Beulah Martin agree to accept the sum of * * * $25,000 per year, without interest, on said contract [of December 11, 1924] until the said total sum of * * * $400,000 shall have been fully paid"; and that the payments of $25,000 per year shall be made for a period of 12 years, but in the event one half of the property or corpus of the estate should be delivered to petitioner within that period, a sum equal to the unpaid balance should be paid to her by the trustee. By express terms these agreements eliminated from the contract of the parties the provision of the December 11, 1924, agreement, assigning an interest in petitioner's " share of the property of the estate " to assure payment of the $400,000. There are no substituted words of assignment. In our opinion, the petitioner merely promised to make payments to his wife out of distributions to be received by him from the estate. With respect to the payment of $100,000, this was to be paid " out of the accumulated income payable to James McDonald." No direction was given the trustees to make this payment. They paid over $500,000 to petitioner, and he in turn paid the $100,000 to his wife. With respect to the payments of $25,000 per

year, with which we are primarily concerned, there is no specific designation of the source, but it is clear that the parties intended that they should be made out of the petitioner's share of the future income, or, if the trust should terminate within 12 years, that the unpaid balance be paid out of either income or corpus. The entire agreement discloses an intention to make the payments out of income (or property, if the trust terminated before 12 years), which first became income of the petitioner. There is nothing which indicates that petitioner made any transfer or assignment of his right to income. We perceive no material difference between the agreement and that involved in *Marion Stone Burt Lansill*, 17 B.T.A. 413; affd., 58 Fed. (2d) 572. As in that case, the order to the trustees to make the payment direct to petitioner's wife, if it was in fact given, was but a convenient method of payment.

The petitioner urges that the assignment in *Commissioner* v. *Field*, *supra*, is almost identical with the agreements here in question. That case is obviously inapplicable. It involved a deed assigning a two-thirds interest " in all the income of [part] of the residuary estate * * * intending hereby to convey to and vest in [the assignee] an undivided two-thirds interest in all the net income adjudicated to belong to [the assignor]." In that case, as well as other authorities relied upon, the assignment was held to effect a complete divestiture of the property interest of the assignor and the income therefrom. This is not the effect of the instruments in question. We hold that the amount of $25,000 paid by the trustees in 1927 to petitioner's wife was properly included in the income of the petitioner. *Ormsby McKnight Mitchel*, 1 B.T.A. 143, 149; *Mitchell* v. *Bowers*, 9 Fed. (2d) 414; affd., 15 Fed. (2d) 287; certiorari denied, 273 U.S. 759; *Hazel T. Power*, 23 B.T.A. 428; affd., 61 Fed. (2d) 625; certiorari denied, 288 U.S. 612, and authorities cited.

*Judgment will be entered under Rule 50.*