PARKLANE RESIDENTIAL SCHOOL, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parklane Residential School, Inc. v. Commissioner
Docket No. 11449-77.
United States Tax Court
T.C. Memo 1983-139; 1983 Tax Ct. Memo LEXIS 648; 45 T.C.M. (CCH) 988; T.C.M. (RIA) 83139; March 16, 1983. *648 Held: Petitioner, a school for retarded children (an organization otherwise exempt from Federal income taxation under section 501(c)(3)), received net unrelated business taxable income of $1,138.04 and $2,732 during the taxable years ending August 31, 1972 and 1973, respectively from the simultaneous purchases and sales of properties. Heldfurther: The receipt of $100,000 constituted unrelated business taxable income and not loan proceeds. Donald G. Gardner, President pro se. James Kamman, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's Federal income taxes for the years ending August 31, 1972, and August 31, 1973, in the amounts of $42,046 and $601, respectively. The issue for our decision is whether petitioner, an organization exempt from income tax pursuant to section 501, [1] received unrelated business taxable income within the meaning of sections 511 and 513. FINDINGS OF FACT Some of the facts have been stipulated. The stipulated facts (to the extent they are not inconsistent *649 with our assessment of the evidence subsequently presented at trial) [2] *650 *651 *652 and the exhibits attached thereto are incorporated herein by this reference. *653 Petitioner, Parklane Residential School, Inc., (Parklane) was organized in California on August 16, 1967, as a nonprofit charitable entity for the purpose of operating a school for mentally retarded children. At the time of filing its petition in this case, petitioner's principal place of business was located in Fullerton, California. On October 1, 1967, petitioner filed application for exemption from Federal income tax under section 501(c)(3). The exemption was granted in due course. During 1969, Donald G. Gardner, Parklane's president, consulted with Philip Gardner [3] of Tax Sheltered Investments, Inc. concerning methods that might be used to raise money to begin petitioner's schooling program for retarded children. Philip Gardner proposed a plan in which his clients would purchase certain real properties from Parklane which Parklane would simultaneously purchase from third parties who were also clients of Philip Gardner. Parklane did not have any direct contact with the ultimate buyers or sellers of the various properties. In addition, Parklane did not personally select any of the properties to be bought and sold. Trust deeds to implement the program were both issued and *654 received by the petitioner. The collections on the sale trust deeds were used by an independent escrow agent (selected by Philip Gardner) to make the payments on the purchase trust deeds. Parklane received the difference between each of the collections on the sale trust deeds and each of the purchase trust deeds, after taking into account certain costs and fees. [4] *655 *656 *657 During the period commencing in late 1969 and continuing into late 1971, Parklane entered into approximately 22 such transactions involving the simultaneous purchase and sale of properties. The properties generally consisted of land and apartments with values averaging $250,000. Parklane received income from these transactions totaling $3,139.04 during the taxable year ended August 31, 1972. Expenses of $2,001 were incurred in connection with the production of this income resulting in net income of $1,138.04. During the taxable year ended August 31, 1973, Parklane received income pursuant to these transactions of $3,732. Expenses of $1,000 were incurred in connection with this income resulting in net income of $2,732. All of these funds were used in the operation of Parklane's school in El Toro, California, for the care and training of retarded children. On July 6, 1971, Donald G. Gardner wrote to the Board of Directors of Parklane stating that the State Department of Public Health required Parklane *658 to be adequately financed in order to receive its license to begin operations. The purpose of the letter was to obtain the Board members' approval of a plan suggested by Philip Gardner to raise $100,000. On July 29, 1971, Philip Gardner wrote to Donald G. Gardner in his capacity as Parklane's president setting forth the parties' agreement that Philip Gardner or his assignees would purchase an assignment of the income from the trust deeds relating to the Clayton Oaks, Mountain Shadows, Airport Investments and Westlake Vista Investment Company properties. Philip Gardner also represented in the letter that, in exchange, the sum of $100,000 would be available to Parklane on or before August 16, 1971. The transaction was structured as a loan from the Hongkong Bank of California (Bank) to San Luis Development Corporation [5] personally guaranteed by Philip Gardner. The purpose of the loan was to provide operating capital for Parklane. The collateral for the loan consisted of the assignment of the income from the four trust deeds which was to be used to service the loan. [6] In an August 27, 1971, letter to the Ank Philip Gardner represented that projected income from these trust deeds *659 between August 27, 1971, and January 15, 1972, would exceed $50,000. In following years the projected income was to average $64,000. Pursuant to this transaction, a check for $100,000 [7] was issued by the Bank to Parklane bearing the date of August 8, 1971. [8] *660 No income resulted from the trust deeds because the buyers of the properties did not make the payments and the trust deeds were ultimately foreclosed on by the original sellers. In accordance with his personal guarantee, Philip Gardner repaid the loan to the Bank. In the notice of deficiency dated August 19, 1977, respondent determined that Parklane received net income of $101,138 in fiscal year 1972 and $2,732 in fiscal year 1973 which constituted unrelated business taxable income. OPINION The sole issue for our decision is whether amounts received by Parklane during the taxable years ended August 31, 1972, and August 31, 1973, constitute unrelated business taxable income within the meaning of sections 511 and 513.
Section 511(a) imposes a tax upon the unrelated business taxable income of certain organizations otherwise exempt from Federal income tax.Section 513(a) defines the term "unrelated trade or business" as any trade or business the conduct of which is not substantially related (aside from the need of such organization for income or funds or the use it makes of the profits derived) to the exercise or performance by such organization of its charitable, educational, or other purpose or function constituting the basis for its exemption under section 501 * * *. An exempt organization has unrelated business taxable income if: (1) the income *661 is from a trade or business; (2) the trade or business is regularly carried on; and (3) the conduct of such trade or business is not substantially related to the performance of the organization's exempt function. Section 1.513-1(a), Income Tax Regs.; Suffolk County Patrolmen's Benevolent Assn. v. Commissioner,77 T.C. 1314, 1319 (1981); Smith-Dodd Businessmen's Assn., Inc. v. Commissioner,65 T.C. 620, 623 (1975). The transactions at issue here are of two types which must be analyzed separately: (1) the simultaneous purchase and sale of real properties and (2) the receipt of $100,000 from the HongKong Bank of California.
Petitioner has the burden of proving that respondent's determination as set forth in the notice of deficiency is in error. Welch v. Helvering,290 U.S. 111 (1930); Rule 142(a), Tax Court Rules of Practice and Procedure.
Parklane is an exempt charitable organization created to operate a school for mentally retarded children. During the period from late 1969 until late 1971 petitioner entered into 22 transactions involving the simultaneous purchase and sale of expensive parcels of real estate. Petitioner earned income from these transactions by receiving the difference *662 between each of the collections on the sale trust deeds and each of the purchase trust deeds after deducting certain costs and fees. The transactions were structured and executed by Philip Gardner, an investment consultant. Parklane received net income from these transactions of $1,138.04 for the fiscal year ending August 31, 1972, and $2,732 for the fiscal year ending August 31, 1973. Clearly, the simultaneous purchase and sale of real estate is not substantially related [9] to the exercise or performance of petitioner's exempt function (i.e., the operation of a school for mentally retarded children). Even though the profits were ultimately used to further petitioner's exempt function, the source of the funds was, in essence, an unrelated business. See section 1.513-1(b), Income Tax Regs.; Professional Insurance Agents of Michigan v. Commissioner,78 T.C. 246, 258-265 (1982), on appeal (6th Cir., Aug. 13, 1982). The fact that petitioner entered into 22 of these transactions over a 2-year period would belie any suggestion that the business was not regularly carried on. See section 1.513-1(c)(1), Income Tax Regs.; Suffolk County Patrolmen's Benevolent Assn. v. Commissioner,supra. *663 Thus, we hold that Parklane received net unrelated business taxable income of $1,138.04 and $2,732 for the fiscal years ending August 31, 1972, and August 31, 1973, respectively. [10] Parklane's receipt of $100,000 from the *664 Hongkong Bank of California presents a more difficult issue for our determination. The notice of deficiency states only respondent's general assertion that the receipt of these funds constitutes unrelated business taxable income taxable in Parklane's fiscal year beginning September 1, 1971, and ending August 31, 1972.As noted, both parties declined to file briefs which might have assisted us in fathoming the transactions at issue. Therefore, our findings of fact as to the nature of this particular transaction result from a gleaning of the entire record. Philip Gardner, the investment consultant responsible for structuring all the transactions at issue here, testified that Parklane borrowed the $100,000 from the Bank and that he personally guaranteed the loan. He further testified that Parklane defaulted on the loan and that he personally repaid the loan to the Bank. The documentary evidence (i.e., the exhibits attached to the Request for Admissions) clearly shows that Philip Gardner himself (through his wholly-owned corporation, San Luis Development Corporation) borrowed $100,000 from the Bank in order to provide funds for Parklane. However, other than Philip Gardner's unsupported *665 testimony, no evidence has been introduced to prove that he, in turn, loaned the $100,000 to Parklane. Therefore, we are unable to conclude that a debtor-creditor relationship existed between Parklane and Philip Gardner with respect to this $100,000. Although this matter is not entirely free from doubt, because petitioner has not sustained its burden of proof we hold that Parklane sold an assignment of the income from the trust deeds to Philip Gardner, who, in turn, pleadged them as collateral to the Bank. In other words, Parklane sold the right to the future income from the trust deeds to Philip Gardner in exchange for the immediate receipt of $100,000. Because we found that the receipt of the income from the trust deeds is unrelated business taxable income the sale of the right to such income also constitutes unrelated business taxable income to Parklane. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. The record in this case pertaining to the nature of the real estate transactions involved is hardly the quintessence of clarity. Respondent declined to file a brief, relying instead on a laconic trial memorandum which does little to assist the Court in resolving this matter. Petitioner also failed to file a brief and appeared without benefit of counsel through its president, Mr. Donald G. Gardner. In the statutory notice of deficiency, dated August 19, 1977, respondent determined that petitioner received unrelated business taxable income from certain real estate transactions in the amounts of $101,138 and $2,732 for the taxable years ending August 31, 1972, and August 31, 1973, respectively. Applying the corporate tax rates of section 11 as provided by section 511(a)(1), respondent determined corresponding deficiencies for those years of $42,046 and $601. A petition disputing the deficiency was filed with this Court on November 16, 1977. In the petition, petitioner alleged that interests in certain real estate transactions were donated to the school and were subsequently sold by the school with the resulting funds used in its charitable operations. Therefore, petitioner concluded, the income thus generated constitutes charitable contributions exempt from tax. Petitioner relied on section 513(a)(3) which provides that unrelated business taxable income does not apply to the sale of merchandise, substantially all of which has been received by the organization as gifts or contributions. At the call of the calendar at the Los Angeles trial session on March 19, 1979, respondent orally moved on behalf of both parties for a continuance on the basis that petitioner organization is now defunct and that the parties expect to arrive at a basis of settlement at a figure substantially below the amount of the deficiency, thus obviating the necessity of a trial on the merits. The Court granted the motion. Settlement efforts apparently failed and a partial trial was subsequently held on February 28, 1980, in Los Angeles. At that time an executed stipulation of facts was presented to the Court. The parties stipulated in essence that the fund raising program consisted of the simultaneous purchase and sale of properties whereby petitioner would receive the difference between the collections for each of the sale trust deeds and the purchase trust deeds. The parties also stipulated that in the taxable year ended August 31, 1972, Parklane discounted five of such trust deeds and received $100,000 in exchange. However, after the stipulations were received by the Court respondent called as a witness, Mr. Philip Gardner, the investment consultant who proposed the fund raising program to Parklane. Philip Gardner testified that Donald G. Gardner, petitioner's president, did not understand the transaction involving the $100,000 and that the stipulation that Parklane discounted trust deeds and received $100,000 therefrom was incorrect. Rather, he testified, Parklane borrowed that amount from the Hongkong Bank of California to begin its operations and that he personally guaranteed the loan. Philip Gardner further testified that he subsequently had to repay the $100,000 to the bank and that Parklane still owes him $100,000 plus interest. After denying respondent's motion to strike the testimony of his own witness, the Court stated that it could not decide the case based on the inconsistencies in the record as to the nature of the transactions at issue. The Court continued the case generally and instructed the parties to obtain documentation of the purported loan transaction from the HongKong Bank of California and stipulate to its authenticity. A second hearing was held on September 15, 1981. At that time the parties supplemented the record with Respondent's Request for Admissions dated April 6, 1981, and the attached exhibits. The Request for Admissions consisted of documents detailing the assignment of income from certain trust deeds to the HongKong Bank of California in exchange for a $100,000 loan to San Luis Development Corporation. Petitioner made no response to Respondent's Request for Admissions and consequently, pursuant to Rule 90(c), Tax Court Rules of Practice and Procedure, the matters are deemed admitted. Our findings of fact herein thus consist of our assessment of the February 28, 1980, stipulation of facts in light of the subsequent testimony of Mr. Philip Gardner, the deemed admitted Request for Admissions and the attached exhibits and the First Supplemental Stipulation filed on October 19, 1982. See Jasionowski v. Commissioner,66 T.C. 312, 318 (1976); Seatree v. Commissioner,25 B.T.A. 396, 401↩ (1932).
3. Donald G. Gardner and Philip Gardner are not related.↩
4. The motivation of the original seller and the ultimate buyer of the properties in these transactions is not entirely clear. However, Philip Gardner provided the following explanation in response to respondent's questions at the partial trial on February 28, 1980. Q * * * And what I would like you to do, if you would, is to take, as an example, a single property transaction and explain to the Court precisely how the transaction occurred, and what it meant to the buyer, and what it meant to the school, and what it meant to the seller? A Yes, First of all, we had a piece of property that was located in San Bernadino called Mountain Shadows Investment Company. The property, I think, was purchased for around $2,000,000,00. * * * The seller of that particular property was the Stubblefield Construction Company, and Stubblefield was in very dire financial straits in 1969. So we arranged to have Parklane obtain the property in an escrow. And then, the prepayment of interest, which was legal in those days, but is no longer legal now because of tax reform acts, would prepay interest. But before that happened a permit from the Commissioner of Corporations, State of California, making sure that full disclosure was given to all parties concerned was obtained. Q The buyer would prepay interest?
A The buyer would prepay interest. Q Now, who was the buyer? A The buyer would be a limited partnership formed for the purchase on the property. Q Who were the partners -- or the limited partners in that partnership? A Various individuals. They would buy the property through Parklane School. Q So first, the property would be essential [sic] sold to Parklane, -- A That is correct. Q -- and then, bought from Parklane? A That is correct. And let's say that you have $1,000,000.00 transaction. You have $100,000.00 of prepaid interest, leaving an all inclusive, the note and trust deed of $1,000,000.00 owed on the property. Parklane would sell the property to the partnership, and they would take back a note and trust deed for $1,000,000.00, due and payable at a rate of 7% interest. Parklane would, in turn, owe to Stubblefield Construction Company $900,000.00, payable interest only for say 5 to 10 years at 7% rate of interest. Parklane would then, pick up the difference between the spread of say $7,000.00 a year. Q And what happened to the $100,000.00 of prepaid interest? A That would have gone to Stubblefield Construction Company. Q Why was Parklane used in the middle of this transaction? A Because they would have $7,000.00 a year income, if the notes and trust deeds were paid. But in 1972, the properties were foreclosed on, and there was no income to Parklane. * * * MR. THOMAS: Mr. Gardner, the $100,000.00 in this typical transaction that was paid by the seller of the property as -- I'm sorry -- the -- by the buyer of the property as prepaid interest, that money did go to the seller of the property? A Yes, it did. Q And how did the seller of the property treat that money? A As principal. Q As principal. The buyer deducted it as interest, and the seller treated it as principal, is that correct? A Yes, But on the books, it should have a notation there, prepaid interest, so later on when the property is paid off, you would have a refund of the prepaid interest, So for tax purposes, you'd have an offset.↩
5. San Luis Development Corporation is a California corporation wholly owned by Philip Gardner. ↩
6. Parklane assigned the income from the trust deeds to San Luis Development Corporation which in turn assigned the income to the Hongkong Bank of California.↩
7. The full amount of the loan was apparently $110,000. The amount of $6,400 was credited to the account of San Luis Development Corporation. The remaining $3,600 was retained by the Bank to cover recording fees and other charges incident to the processing of the loan. ↩
8. Although the check was dated August 8, 1971, the parties stipulated that the check was not actually or constructively received by petitioner until September 1971 (i.e., it was not received before the beginning of Parklane's taxable year ending August 31, 1972).
9. Section 1.513-1(d)(2) provides in pertinent part: (2) Type of relationship required. Trade or business is "related" to exempt purposes, in the relevant sense, only where the conduct of the business activities has causal relationship to the achievement of exempt purposes (other than through the production of income); and it is "substantially related," for purposes of section 513↩, only if the causal relationship is a substantial one. * * * 10. In its petition, Parklane asserts that the income generated from these transactions falls into the exception from the definition of unrelated trade or business found in section 513(a)(3)↩ (i.e., that the term does not include a business "which is the selling of merchandise," substantially all of which has been received by the organization as gifts or contributions). We do not find this exception to be applicable as no evidence was introduced which would permit us to conclude that any "merchandise" was contributed to petitioner.