Abe Jackson v. Commissioner.
Jackson v. Commissioner
Docket No. 4285.
United States Tax Court
1945 Tax Ct. Memo LEXIS 203; 4 T.C.M. (CCH) 503; T.C.M. (RIA) 45164; May 8, 1945
Carl E. Davidson, Esq., 1525 Yeon Bldg., Portland 4, Ore., for the petitioner. Earl C. Crouter, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner added $2,246.82 and $2,727.77 to the net income shown by petitioner's returns for the respective years 1940 and 1941 and determined deficiencies in income tax in the amounts of $241.27 and $731.91. Petitioner charges that he erred in doing so. Findings of Fact Petitioner, a resident of Portland, Oregon, filed his income tax returns *204 for the taxable years with the collector of internal revenue for the district of Oregon. They were prepared on a cash basis. During the taxable years petitioner was a member of a partnership operating under the name "Blue Mountain Hide, Wool and Fur Co." the partnership being composed of petitioner, his son, Harry W. Jackson (sometimes hereinafter referred to as Harry, Jr.), and petitioner's brother, Harry Jackson (sometimes hereinafter referred to as Harry, Sr.). Each of the partners owned an undivided one-third interest in the partnership. The business of the partnership consisted of buying and selling hides, wool, fur and similar products. Petitioner had been engaged in such business since early in the century. His brother, Harry, Sr., became associated with him about 1930 and his son, Harry, Jr., about 1939. All three of the partners were experienced and active in the affairs of the business during the taxable years. In February 1938 Stanley Jaloff entered the employ of the partnership as an office employee at a salary of $25 per week. At that time Jaloff was keeping company with petitioner's daughter, Fae, and intended to marry her. They were married in June 1938. In August *205 1939 Jaloff had a discussion with petitioner with reference to the compensation being received by him from the partnership. Jaloff stated to petitioner that his compensation was not sufficient to support him and his wife properly; that he had received a definite offer of employment at a substantial increase in salary, to wit, $500 per month; and that he thought, inasmuch as he had learned quite a bit about the business and was doing more than when he first came to work for the partnership, he was entitled to more compensation. Petitioner at that time stated he agreed that Jaloff's services were worth more than he was being paid by the partnership and expressed an intention to increase his compensation by giving him a portion of his (petitioner's) share of the partnership income. Shortly after the conversation referred to above petitioner went to an attorney and had a document prepared reading, exclusive of signature and acknowledgment, as follows: "WHEREAS I am a partner holding a certain interest in that certain business known as the Blue Mountain Hide, Wool and Fur Company, and "WHEREAS I am desirous of giving irrevocably and unconditionally, except as hereinafter qualified, *206 to my daughter and son-in-law, Fae and Stanley Jaloff, a certain portion of my interest in said business, "NOW THEN, IT IS HEREBY AGREED that in consideration of mutual covenants and agreements and in consideration of mutual love and affection, and in further consideration of other good and valuable consideration, the receipt of which is hereby acknowledged by myself from the said Fae and Stanley Jaloff, I hereby give, transfer, set over and grant unto the said Fae and Stanley Jaloff a portion of my interest in that certain business known as the Blue Mountain Hide Wool and Fur Company in the sum of One Thousand ($1,000.00) Dollars. "PROVIDED, HOWEVER, that said interest shall never be withdrawn from said business nor shall it be disposed of or sold to any person or persons so long as the said business shall continue or so long as it shall be the desire of the partners or the survivor thereof to continue said business, and "In consideration of mutual covenants and agreements and other good and valuable consideration, I hereby further give, transfer, set over and grant unto the said Fae and Stanley Jaloff a portion of the profits that accrue from said business from my interest *207 therein in the amount of 20% of 33 1/3% of any and all sums that may hereafter be declared as profits in said business, less, however, such sum or sums that shall be paid to them as profits by virtue of their interest in said business as hereinbefore provided. "Be IT FURTHER PROVIDED that said profits as hereinbefore set forth may at any time be withdrawn from said business at the option of said Fae and Stanley Jaloff. "IN WITNESS WHEREOF I hereby set my hand and seal this 13th day of September, 1939." Petitioner was becoming somewhat less active in the business of the partnership and prior to the date of the trial had become entirely inactive. The business of the partnership is now being carried on entirely by Jaloff and Harry, Jr., Harry, Sr., having withdrawn from the firm and Jaloff having acquired, indirectly, his interest in the partnership. The $1,000 referred to in the above instrument came as a surprise to Jaloff; for he had understood from his conversation with his father-in-law that he was merely to be given additional compensation for his work from the interest of petitioner in the business. After the delivery of the instrument to Jaloff $1,000 was credited on *208 the books of the partnership to a capital account in his name. Subsequently Harry, Sr., having ascertained that such entry had been made, objected to Jaloff being shown as a partner and the amount was transferred to the capital account of petitioner. To indicate that it actually belonged to Jaloff, however, his name was written alongside the $1,000 entry in petitioner's capital account. So long as Harry, Sr., was a partner Jaloff never became a partner in the strict sense of the word. However, there was an understanding between Jaloff and petitioner that the extra compensation credited to him upon the books of the partnership, which was not actually withdrawn by him, should become capital in the business although the amount was set up in a drawing account and could have been withdrawn. In the partnership return for 1940 the net income was shown to be $33,702.38 and petitioner's one-third share thereof was shown in Schedule J as $11,234.12. Eighty percent of the latter amount, or $8,987.30, was reported by petitioner as his income from the partnership. In the partnership return for 1941 the net income was shown to be $40,916.53 and in Schedule J thereof petitioner's share was *209 shown to be $13,638.84. Eighty percent of the latter amount, or $10,911.07, was included in petitioner's income as income from the partnership. In Stanley Jaloff's returns for the years 1940 and 1941 he reported as partnership income 20 percent of the amounts shown on the partnership returns as petitioner's share of the income, reporting $2,246.82 as income for 1940 and $2,727.77 as income for 1941. These amounts had been credited to his drawing account on the books of the partnership; but most of them had not actually been withdrawn. Appended to each partnership return is a statement reading as follows: "By a supplemental partnership agreement dated 1939 Stanley Jaloff receives twenty percent of the partnership income of Abe Jackson." It was prepared by an accountant, who had been employed to prepare the returns, and represented his interpretation of the agreement of September 13, 1939, shown above. At the end of each of the calendar years the amount in Jaloff's drawing account, which had come from petitioner's earnings in the partnership as hereinabove set out, was transferred to the capital account of petitioner, followed by a notation indicating that it, like the $1,000, *210 belonged to Jaloff. Some of the amounts were subsequently withdrawn by Jaloff; but most of them remained and ultimately became a part of Jaloff's capital contribution to the partnership. At the end of 1941 Harry, Sr., withdrew from the partnership, his interest being purchased by petitioner and Harry, Jr. Jaloff's salary was increased in 1940 to $35 per week and later to $45 per week. After Harry, Jr., had acquired a portion of Harry, Sr's., interest in the partnership he, at the beginning of 1942, entered into an agreement with his brother-in-law, Jaloff, under which he agreed, in consideration of Jaloff's covenant to remain in the employ of the partnership and to devote all of his time and attention to its business for the full year 1942, to pay Jaloff "10 percent of the individual net profits earned by him [Harry, Jr.] from his half interest in the said co-partnership * * *." One-half of such amount could be drawn by Jaloff during the year; but the remaining half was not to be drawn or paid until the end of the year. A similar agreement was executed by Jaloff and Harry, Jr., for the year 1943. As a result of carrying out the several agreements between petitioner and Harry, *211 Jr., on the one hand and Jaloff on the other, Jaloff ultimately became a full one-third partner in the business on January 1, 1944, Harry, Jr., and petitioner being the other two members of the partnership. Petitioner was nearly 70 years of age in the taxable years, was afflicted with diabetes and wasn't able to perform all of the duties that he had previously performed, especially such as going out on the road. He did, however, spend approximately 90 percent of his time about the business of the partnership. Jaloff gradually took over most of his duties although there had been no specific agreement to that effect. No actual partnership agreement between Jaloff and the other parties named above, or any of them, was made or existed during either of the taxable years except as heretofore set out. The aggregate amount paid and credited to Jaloff during the year 1940 ($4,066.82) and during 1941 ($4,855.27) was reasonable compensation for the services rendered by Jaloff during each of the years. In the notice of deficiency it was held that petitioner had merely made an assignment of a portion of his partnership earnings and that 100 percentum of the amounts shown on the partnership *212 returns should have been included in his gross income. Opinion The basic facts are not seriously in dispute. Petitioner, a member of a partnership, chose to assign to his son-in-law 20 percentum of his 33 1/3 percentum in the profits of the business. Superficially it would seem to be clear, as respondent determined, that his tax liability was not thereby affected; for income tax may not "be escaped by anticipatory arrangements and contracts however skillfully devised" ( Lucas v. Earl, 281 U.S. 111) nor even by making "an equitable assignment" of a portion of the income of a partnership. Burnet v. Leininger, 285 U.S. 136. Cf. Helvering v. Eubank, 311 U.S. 122; Helvering v. Horst, 311 U.S. 112; Harrison v. Schaffner, 312 U.S. 579. But is the underlying principle of the cited cases determinative of the present controversy? Petitioner insists that it is not. His counsel undertook to prove, as alleged in the petition, that petitioner had agreed with his son-in-law he would assign to him 20 percentum of the profits to be derived from the one-third interest in the partnership, as additional compensation, in consideration *213 of the son-in-law remaining in the employ of the partnership. As stated upon brief, he views the question to be whether an ageing partner, feeling that he cannot continue to be as active in the partnership business as he had been previously, may be relieved from the payment of an income tax on the portion of his partnership earnings which is paid to an employee of the partnership "expected to take some of his burden." We have heretofore indicated, in our findings and in the first paragraph of this opinion, agreement with much of the respondent's argument upon brief, particularly that set out under the first three subdivisions thereof. We therefore pass, without detailed discussion, his contention that Jaloff was not a partner, either with petitioner or in the "Blue Mountain Hide Wool and Fur Co." during the taxable years; that under section 182 I.R.C. et seq. (as amended) each partner, including petitioner, is taxable upon the net income of the partnership whether distribution is made to him or not; and that a mere assignment of a portion of the income of a partner does not relieve him from the tax. That leaves, then, only one question, indicated generally *214 above and stated by respondent in the fourth subdivision of his brief as follows: Assuming that the 20 percent of petitioner's profits assigned to Jaloff represented compensation for services, Jaloff was an employee of the partnership and not of petitioner, and for that reason no deduction may be allowed petitioner on account of such payments. It is true, as respondent points out, that the close family relationship justifies scrutiny of the underlying facts. That advances us but slightly, however; for all of the members of the partnership were very closely related. It is also true that there is, in the instrument executed by petitioner, some indication of a donative intent, especially with reference to the $1,000 interest in the business; but that need give us no special concern for no contention is being made that the income in question was derived from, or attributable to, that interest. The evidence justifies the conclusion that Jaloff and petitioner both felt that Jaloff's services were worth more than the partnership was paying him; that Jaloff had been offered employment at a substantial increase in salary, i.e., at $500 per month; and that petitioner, as a member of the *215 partnership and interested in promoting its business, was willing to expend a portion of his earnings to keep Jaloff in the employ of the partnership. While the means devised may, as respondent suggests, have been tantamount to petitioner making a gift to his two partners equivalent to two-thirds of the amount paid to Jaloff, he may have felt that this was the lesser of the two onerous alternatives confronting him. It may be that the other partners felt that his affliction and advanced age obligated him to assume such burden. However that may be, the other partners seem to have been unwilling to reduce their proportionate earnings by increasing Jaloff's compensation but to have been perfectly cognizant of the fact that petitioner was doing so and willing to accept the indirect benefit. The question which evolves, therefore, is: May the amount paid to the employee be deducted as an ordinary and necessary expense paid or incurred by the taxpayer during the taxable years in carrying on a trade or business under section 23 (a) (1) (A) I.R.C. or under subsection (2) of the same section, added by section 121 of the Revenue Act of 1942 and made retroactively effective *216 (subpargraph d) to the taxable years? The first-mentioned section specifically includes "a reasonable allowance for salaries or other compensation for personal services actually rendered." The last-mentioned allows deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation or maintenance of property held for the production of income." Respondent argues that neither section may be applied here because the services rendered by the employee were for the partnership. He also contends that the amounts paid cannot be said to be ordinary because customarily all partnership expenses are paid by the partnership rather than by an individual member. James D. Robinson, 45 B.T.A. 39, is thought to support this view; but in our opinion it is distinguishable. In that case the extra compensation was paid to an employee of a corporation by another employee of the corporation. It was held that no relationship of employer and employee existed between the two; that it was extraordinary for one employee to apply his personal funds toward the compensation of another employee; *217 and that the amount could not be allowed as an ordinary and necessary expense of the one making the payment. Under the revenue law a corporation is generally recognized as a separate entity. It is a taxpayer. A partnership, on the other hand, is dealt with for tax purposes as it is under general law - each of the members has contributed property or services in a common enterprise, is liable for his proportionate share of the losses, entitled to receive his proportionate share of the income, and, under section 181 et seq. I.R.C. is taxable upon his share of the income whether distributed to him or not. The partnership is in no sense a separate entity or an "insulator" between its members and creditors, as is a corporation. Keeping in mind the principles briefly alluded to, it does not tax our credulity to believe that petitioner deliberately obligated himself to make the extra payments to Jaloff out of his portion of the partnership income for the purpose of having the personal benefit of retaining him in the business. While the evidence does not show that he had exacted an agreement from Jaloff that he would assume all of the partnership responsibilities *218 formerly carried by him (petitioner) as a partner, the evidence clearly indicates that that was the result. The effect of what was done, therefore, was that petitioner employed Jaloff to work for him. In that view the amount paid is deductible under Section 23 (a) (1) (A). But if we have erred in reaching the conclusion expressed in the preceding paragraph - which we do not intimate - and if the expenditures are "non-trade or nonbusiness expenses", they are deductible under Section 23 (a) (2). They were paid "for the production * * * of income, or for the management, conservation, or maintenance of property held for the production of income." It is unnecessary to state specifically in which category they are to be placed. They were necessary for the taxpayer, proximately resulted from his business, and were ordinary in the sense that it is not at all unusual for an ageing partner to employ someone to perform some of the duties incumbent upon him to be performed for the benefit of the partnership. Cf. Kornhauser v. United States, 276 U.S. 145; Deputy v. DuPont, 308 U.S. 488. Alfred LeBlanc, 7 B.T.A. 256, is quite similar upon its facts. There *219 the petitioner, to protect and preserve his own business interest, had entered into an agreement with his son, an employee of a corporation in which petitioner was a stockholder, that if he would continue in its employ at a comparatively small salary he should have the dividends upon his father's stock. It was held that the dividends were includible in petitioner's gross income but that the payments made to the son constituted deductible business expense. This case supports the conclusion, which has already been expressed, that while the amounts in issue were properly included by the respondent in petitioner's income, they are allowable as deductions under section 23 I.R.C. Therefore the deficiencies in issue will be set aside. Decision will be entered for the petitioner.