Gilbert Herndon v. Commissioner. G. Herndon v. Commissioner. Sarah Herndon v. Commissioner.
Herndon v. Commissioner
Docket Nos. 12587, 12588, 12589, 12590.
United States Tax Court
1948 Tax Ct. Memo LEXIS 247; 7 T.C.M. (CCH) 125; T.C.M. (RIA) 48030; February 26, 1948
Homer J. Fisher, Esq., for the petitioners. J. Marvin Kelley, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: These cases, which have been consolidated, involve proposed deficiencies in income taxes for the years 1942, 1943 and 1944 as follows: Deficiency
Docket No.
Year
determined
12587
1942 and 1943
$4,177.20
12588
1942 and 1943
4,177.81
12589
1944
5,753.45
12590
1944
5,758.45
The questions involved are: (1) *249 May petitioners receive a tax benefit by the deduction from their community income of a percentage of Gilbert Herndon's income from a partnership business, which deduction represented commissions paid by Gilbert Herndon to his own son, Milton Herndon, as compensation for work performed by Milton for the partnership; (2) If such deduction is allowable was a commission of 20 per cent of Gilbert Herndon's partnership share reasonable in amount. Findings of Fact Petitioners are husband and wife and reside in Dallas, Texas. They filed separate income tax returns for the taxable years on the community property basis. Gilbert Herndon (designated as G. Herndon in Docket No. 12589), hereinafter referred to as petitioner, has been engaged in the produce business since 1911. Prior to 1942 his business consisted principally in buying and selling eggs and poultry. Before 1936 his business was located at Fort Worth, Texas. In 1936 he formed a partnership with his brother, D. C. Herndon, and moved to Dallas where the business was continued as a partnership under the name of Herndon Produce Company. D. C. Herndon owned a sixty per cent interest in the partnership and the petitioner owned a forty *250 per cent interest. D. C. Herndon financed the business; he was not an experienced poultry and egg man. Milton Herndon, son of petitioner, worked in the business during his vacations while in high school. He finished high school in 1928 at the age of 18 and thereafter worked regularly with his father in the poultry business, except that in 1931 and 1932 he attended North Texas Agricultural College and in 1937 and 1938 he attended Texas University. In 1938 the petitioner was injured and was unable to work in the business for about one year. During this time the business was operated by Milton and D. C. Herndon. After he recovered petitioner resumed his duties in the business. In 1932 and 1933 Milton worked four or five months in egg drying plants in Fort Worth and Abilene, Texas, and acquired a working knowledge of the egg drying business and the machinery necessary in the construction of such plants. In 1941 he was employed as bookkeeper by the Herndon Produce Company at a salary of $1,550 a year. In the latter part of that year he persuaded the firm to go into the egg drying business. In the latter part of 1941 and the early part of 1942, the Dennison Poultry Company was engaged *251 in constructing an egg drying plant at Birmingham, Alabama. Milton Herndon was offered employment as manager of the plant at a salary of $100 a week plus 10 per cent of the net profits, but he did not accept the offer. One Harry Winn was then employed as manager of the Birmingham plant at a salary of $100 per week and 10 per cent of the net profits. Under this agreement he received total compensation for 1943 of approximately $13,000 and for 1944 of approximately $34,800. The Dennison plant at Birmingham, Alabama, was similar in size and capacity to the egg drying plant of the Herndon Produce Company at Dallas. On December 31, 1941, petitioner and his son, Milton, executed an agreement as follows: "STATE OF TEXAS COUNTY OF DALLAS "WHEREAS, D. C. Herndon and Gilbert Herndon d/b/a Herndon Product Company, are engaged in the produce business and the egg drying business at 2701 and 2116 Canton Street, in the City of Dallas, Texas and, "WHEREAS, M. H. Herndon, son of Gilbert Herndon, is employed by said produce company on a salary basis only and, "WHEREAS, it is considered by G. Herndon of said partnership of D. C.Herndon and G. Herndon that M. H. Herndon is of great value and *252 assistance to said business at this time and has, heretofore, for many years contributed valuable services to said partnership and to him for which he has not been adequately compensated and that his salary has not been commensurate with the time and efforts expended by him. "NOW THEREFORE, for and in consideration of the services heretofore rendered and the services to be rendered, and the further consideration of the love and affection which G. Herndon has for his son, M. H. Herndon, it is mutually agreed by and between G. Herndon and M. H. Herndon that the said M. H. Herndon shall receive, in addition to all salaries and compensations from said partnership of Herndon Produce Company, the further sum of 20% of all net profits received from said business by the said G. Herndon during the calendar year of 1942, commencing with January 1, 1942 and ending with December 31, 1942. This agreement shall be contingent upon the said M. H. Herndon remaining in the employ of Herndon Produce Company during the calendar year of 1942, and in the event such employment shall come to an end prior to December 31, 1942, this agreement shall become null and void. "Witness our hands, this the 31st *253 day of December, 1941. "(Signed) G. Herndon "(Signed) M. H. Herndon" This agreement was renewed verbally in 1943 and 1944. The agreement was drawn by a lawyer on the instruction of petitioner but petitioner did not tell the lawyer to put in the phrase "love and affection." The egg drying plant of the Herndon Produce Company was constructed early in 1942 under the direction of Milton Herndon. When completed it employed about 100 men. Milton Herndon was general manager of the plant and looked after the equipment and improvements. The government took all of the finished product and pressed for greater production. The plant was operated around the clock, sometimes with two shifts and sometimes with three shifts. Milton roomed at the plant and was either on the job or on call practically at all times. During the years 1942, 1943 and 1944 Milton was employed by the partnership of Herndon Product Company at a salary of $2,815, $3,900 and $3,900, respectively. The books of Herndon Product Company show that in 1943 it disbursed for the benefit of Milton Herndon $2,431.51, in 1944 $1,461.51, and in 1945 $6,990.83, in addition to the salary payments. These disbursements were primarily *254 for the payment of Milton's income tax and were charged to the account of the petitioner. During the years 1942, 1943 and 1944 the gross sales of the Herndon Produce Company were approximately $4,000,000 per year. Of this amount approximately $3,000,000 was from the egg drying department of the business. The average net profits of the business for the respective years was approximately $460,000 and about 79 per cent of this amount was due to the egg drying department. The partnership had borrowed large sums from the R.F.C. and under the loan agreements petitioner's drawings were limited to $8,000 in 1942 and $8,750 in 1943 and 1944. However, petitioner, in his income tax returns for each of the taxable years, reported his partnership income as though received by him in full. He deducted in his income tax returns from the community income reported, as compensation to his son, Milton, for services rendered, the following amounts: for 1942, $11,523.10; for 1943, $5,339.72; and for 1944, $16,366.75. These amounts were reported as income in the respective years by Milton Herndon. At the end of each of the years in question, petitioners had no items of income owing to them but not *255 collected, nor items of deductible expense due but unpaid, except the item of partnership income reported on their returns and the share of such income due but unpaid to Milton Herndon. Milton Herndon indicated on his income tax returns that the returns were filed on the cash basis. There were no items of income which he was entitled to receive but had not received, except the compensation due him from his father, nor any deductible expense which he owed but had not paid. During the taxable years 1942 to 1944, inclusive, the petitioner filed Social Security returns showing Milton Herndon as his employee. He also filed withholding tax returns for income withheld on commissions due Milton as an employee. In 1944 the amount of tax so withheld was $3,011.54. The petitioner was told by the collector's office that he must file such returns. The Commissioner of Internal Revenue disallowed as deductions the entire amounts paid or owing to Milton Herndon under the terms of the contract of December 31, 1941, i.e., $11,523.10 for 1942; $5,339.72 for 1943; and $16,366.75 for 1944. The salary paid Milton Herndon by the partnership, plus 20 per cent of petitioner's net share of partnership *256 profits, constituted reasonable compensation for his services to the partnership in the respective taxable years in question. Opinion In the explanation of adjustments attached to the respective deficiency notices herein the Commissioner held that the amounts of $11,523.10, $5,339.72 and $16,366.75 deducted by petitioner in his returns for the respective years 1942, 1943 and 1944 "are not allowable under,he provisions of section 23 (a) (1)or 23 (a) (2) of the Internal Revenue Code". [1]
*257 The respondent contends that the "profitsharing" agreement between petitioner and his son Milton Herndon was merely a plan to split the income of petitioner in order to slice his taxes thinner; that the claimed expenditures are not deductible as expenses of a trade or business within the meaning of section 23 (a) (1) (A) because they were not "ordinary and necessary" and were not for services actually rendered by Milton for or on behalf of the petitioner. For the same reasons he contends that the claimed deductions are not allowable under section 23 (a) (2). He argues that Milton's services were performed for the partnership and were paid for by the partnership. He urges that in any event the petitioner is not entitled to deduct any amount in 1942 because there is no evidence that any part of the claimed deduction was paid in that year, and that he would not be entitled to deduct more than $2,431.51 in 1943 and $1,461.51 in 1944, these being the amounts paid by the partnership for the benefit of Milton during the respective years and charged to the petitioner. In support of this contention the respondent calls our attention to section 24 (c) of the Internal Revenue Code *258 [2] and argues that all three of the factors required therein are present here, i.e., the compensation was not paid within the respective taxable years or within two and one half months after the close thereof; Milton Herndon made his returns on the cash basis and the amounts petitioner claimed as deductions are not includible in Milton's income; and petitioner and Milton were persons between whom losses would be disallowed under section 24 (b) of the Code, i.e., "Members of a family." *259 The petitioners do not claim to have paid during the years in issue the entire amounts payable to Milton under the terms of their agreement. They do contend, however, that they are entitled to deduct the entire amounts, which petitioner Gilbert Herndon became unconditionally obligated to pay, in the respective years when the services were performed because such amounts were either paid or incurred within the meaning of section 23 (a) (1) (A) or section 23 (a) (2) of the Internal Revenue Code. The petitioner relies upon Alfred LeBlanc (1927), 7 B.T.A. 256; Estate of K. Threefoot (1927), 9 B.T.A. 499; and a more recent memorandum opinion of this Court. In Alfred LeBlanc, which is quite similar upon its facts, the petitioner, to protect and preserve his own business interest, had entered into an agreement with his son, an employee of a corporation in which petitioner was a stockholder, that if he would continue in its employ at a comparatively small salary he should have the dividends on his father's stock. It was held that the dividends were includible in the petitioner's gross income, but that the payments made to his son constituted *260 deductible business expense. In the Threefoot case the facts were substantially similar to the LeBlanc case, supra. Salaries were paid by a father (a member of a partnership) to his two sons, in addition to the salaries paid them by the partnership, for performing services in connection with the operation of the partnership. These payments were made to the sons by the partnership and charged to the father's account. It was held that the amount of such payments was includible in the father's income but was deductible by him as an ordinary and necessary business expense. In Lillian M. Goldsmith, 7 B.T.A. 151, the petitioner was a stockholder and the vice president of a corporation at a salary of $5,000 per year. She hired another person to look after her interests in the corporation and to keep her advised in the premises. It was held that the amount paid such employee was deductible as an ordinary and necessary business expense. In a partnership each partner is liable for his proportionate share of the losses and is taxable for his share of the income whether distributed to him or not. Keeping in mind these principles and the fact that Milton Herndon was responsible *261 for the Herndon Produce Company undertaking the egg drying end of the business; that he installed, managed and conducted it throughout the taxable years; that the egg drying department was responsible for gross sales during 1942, 1943 and 1944 of approximately $3,000,000 a year, which was three-fourths of the total sales of the partnership and for more than three-fourths of the gross profits, it does not tax our credulity to believe that the petitioner obligated himself to make the extra payments to Milton out of his portion of the partnership income for the purpose of having his services in the business. In our judgment the payments to Milton by petitioner were business expenses within the meaning of section 23 (a) (1) (A) and deductible as such. Not only were they incurred in connection with petitioner's business but the services were ordinary and necessary in carrying on such business. Having decided that the expenses paid were deductible under section 23 (a) (1), I.R.C., it is unnecessary to discuss whether they were deductible under section 23 (a) (2). "Sec. 23 (a) (2) is comparable and in pari materia with sec. 23 (a) (1) authorizing business expenses. *262 * * * The effect of sec. 23 (a) (2) was to provide for a class of non-business deductions coextensive with the business deductions allowed by sec. 23 (a) (1), except for the fact that, since they were not incurred in connection with a business, the section made it necessary that they be incurred for the production of income or in the management or conservation of property held for the production of income." Bingham's Trust v. Commissioner, 325 U.S. 365. We have held that petitioner is entitled to deduct the amounts paid to Milton during the taxable years. By the same reasoning he is entitled to deduct the amounts incurred but not paid unless the respondent is correct in his contention that the deduction of such amounts is inhibited by section 23 (c), I.R.C. Obviously the factors indicated in section 24 (c) (1) and 24 (c) (3) are present in this case. But, since the factors set out in section 24 (c) (1), (2) and (3) must all be present if the deduction of unpaid expenses is disallowed under that section, the decision turns on whether the factor indicated in 24 (c) (2) is also present here. Section 24 (c) (2) provides that no deduction of expenses *263 incurred but not paid can be allowed under section 23 (a) "If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends." It therefore becomes necessary for the taxpayer to show that under the method of accounting employed by Milton the unpaid portion of the compensation due him under the agreement with the petitioner is includible in his gross income. To meet this burden the petitioner argues that Milton was really on the accrual basis of accounting as to the most substantial portion of his income; that he did not have any items of income or expense that were accruable except the unpaid compensation from the petitioner; that he did not know the difference between the cash and the accrual basis of reporting income; and that his indicating a cash basis by a check mark on his return is not controlling He further calls our attention to Squire v. Denman, 18 Fed. Supp. 287-288; Bancroft v. United States, 49 Fed. Supp. 476, 480; and Cecil v. Commissioner, 100 Fed. (2d) 896, *264 in support of his argument. In all the cases cited the petitioner kept books and had some system of accounting. In the instant case the petitioner has not shown that Milton kept any books of account or that he had any system of accounting. Substantially all of his income was from compensation for services. Certainly it was not necessary, in order to reflect his income, that he accrue the unpaid portion of compensation earned during the taxable year. Nor was it necessary, or proper, for the petitioner to withhold income tax on wages due his employee but unpaid during the taxable year. Ordinarily a taxpayer who keeps no books or records of account cannot be on the accrual basis. In such cases the cash basis is proper. John A. Brander, 3 B.T.A. 231; Sam Greengard, 8 B.T.A. 734, aff'd 29 Fed. (2d) 502; Daniel Hecker, 17 B.T.A. 874. After considering all the facts before us we are of the opinion that Milton Herndon was on the cash basis as contended by the respondent and that the amount of compensation due him under his agreement with petitioner but not paid, is not includible in his gross income. We hold that section 24 (c) applies *265 and such expenses incurred by petitioner but not paid are not deductible in the respective years. It follows that petitioner is entitled to no deduction for 1942 on account of payments to Milton under the agreement, for no payments are shown to have been made in that year. In 1943 and 1944 payments for Milton's benefit in the respective amounts of $2,431.51 and $1,461.51 were made by the partnership and charged to petitioner's account. These amounts are deductible from petitioner's gross income in the respective years. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *
(2) Non-Trade or Non-Business Expenses. - In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.↩
2. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and, (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b)↩.